# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KAREN E. DUPREY,

       Plaintiff,

vs.                                           No. CIV 08-0756 JB

TWELFTH JUDICIAL DISTRICT COURT,
State of New Mexico; HON. KAREN L. PARSONS,
Individually and in her official capacity as
Chief Judge, Twelfth Judicial District
Court, State of New Mexico; HON. EUGENIO S. MATHIS,
Individually, and in his official capacity as
Chairperson of the Judicial Grievance Board
convened at Santa Fe, New Mexico on Friday,
November 16, 2007 and re-convened on
5 December 2007; JAN PERRY,
Individually and in her official capacity as
Court Administrator, Twelfth Judicial District
Court, State of New Mexico; LORRI A. HATCHER,
Individually and in her official capacity as
Director, New Mexico Administrative Office
of Courts, Human Resources Division;
and VALERIE PARK, Individually and in her official capacity as
Project Manager, New Mexico Administrative
Office of the Courts Human Resources Division;

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Mathis' Motion to Dismiss Pursuant

to F.R.C.P. 12(b)(6), filed October 2, 2008 (Doc. 16).  The Court held a hearing on June 18, 2009.

The primary issues are: (i) whether the Rooker-Feldman doctrine bars this lawsuit; (ii) whether

Defendant Eugenio S. Mathis, Chief Judge for the Fourth Judicial District Court of New Mexico,

was acting in a quasi-judicial capacity when he presided over an appeal in his capacity as

Chairperson of the Judicial Grievance Board and is therefore entitled to absolute judicial or quasi-

judicial immunity; and (iii) whether the Court should sanction Plaintiff Karen E. Duprey and award fees in favor of Mathis for having to defend against this motion.  Because the grievance hearing underlying this lawsuit was not a state-court action, the <u>Rooker-Feldman</u> doctrine does not apply. Nevertheless, because Mathis' role on the grievance board was similar to what a judicial officer would perform, because adversely affected participants in grievance hearings such as the one Duprey had might file lawsuits for damages in at least some cases, and because the grievance board hearing has various features that afford parties such as Duprey procedural protections and a chance at judicial review, the Court finds that Mathis' actions as a member of that grievance board entitle him to absolute judicial immunity.  The Court also concludes that fees and sanctions against Duprey are inappropriate, because Mathis has not shown a reason to deviate from the general rule that parties bear their costs and because Duprey's motion was in good faith and is not frivolous.

## **FACTUAL BACKGROUND**

Duprey was an employee of the Twelfth Judicial District Court for the State of New Mexico. <u>See</u> Complaint for Employment Discrimination and Retaliation and for Deprivation of Civil Rights Under Color of State Law ¶ 2, at 2, filed August 18, 2008 (Doc. 1)("Complaint").  She began working for the Twelfth Judicial District Court on August 31, 1995.  <u>See</u> <u>id.</u> ¶ 34, at 8.  In the calendar year 2000, Duprey competed for the position of Court Administrator.  <u>See</u> <u>id.</u> ¶ 36, at 8. Although she alleges she was highly qualified for the position, Duprey did not receive the promotion.  <u>See</u> <u>id.</u> ¶ 36, at 8.  Rather, another, less qualified employee received the job and "from the outset exhibited jealousy and antipathy toward [Duprey], and directly and indirectly encouraged younger employees and minority employees working under [Duprey] to exhibit insubordination and discontent."  <u>Id.</u> ¶ 36, at 8.  Duprey further alleges that she suffered various other negative actions at work, including denial of a pay raise because of an unfair evaluation, degrading and demeaning

interrogations based on unfounded allegations made by Hispanic subordinates who had banded against her, a reprimand, and ultimately, a demotion. See id. ¶¶ 37-43, at 9-10.

Duprey has named Mathis as a defendant in her lawsuit. See id. ¶¶ 13-14, at 4. Duprey alleges in her Complaint that, after being demoted, she "filed an internal complaint of harassment pursuant to the New Mexico Judicial Branch Personnel Rules." Id. ¶ 44, at 10. Duprey also filed a grievance because of the demotion and had a hearing before the Grievance Board. See id. ¶¶ 46-48, at 10-11.

Mathis was chairman of the Grievance Board. See id. ¶ 47, at 10-11. Duprey requested that Mathis recuse himself from chairing the Grievance Board because she was concerned about Mathis' working relationship with the individual who initiated her demotion. See id. Mathis did not recuse himself, and the hearing proceeded on November 16 , 2007. See id. ¶¶ 47, at 10-11. At the hearing, Mathis demonstrated a frequent attitude of arrogance and condescension towards Duprey and her counsel, cutting questions short and generally making her feel that she would not receive a fair hearing. See id. ¶¶ 48, at 11.

There was insufficient time to complete the November 16, 2007 grievance proceedings. As a consequence, the hearing was scheduled to pick up again on December 5, 2007. See id. ¶¶ 52, at 12. Before the December 5, 2007 hearing, Defendant Valerie Park revealed to Duprey and Duprey's counsel that audio recordings from the November 16, 2007 proceeding had been accidentally destroyed. See id. ¶¶ 53, at 12. Because the audio tape had been destroyed, Duprey informed Mathis that she wished to begin the hearing anew. Mathis denied the request to start the hearing over and, by doing so, denied Duprey a record of what she believes to be the most critical testimony. See id. ¶¶ 55-56, at 12. Ultimately, at the end of the December 5, 2007 portion of the hearing, the Committee ruled against Duprey. See id. ¶ 57, at 12.

## PROCEDURAL BACKGROUND

Duprey filed her Complaint in the United States Court for the District of New Mexico on August 18, 2008. She has made a series of statutory and constitutional claims against Mathis. Duprey is also seeking punitive damages against Mathis. See id. ¶¶ 92-93, at 18-19. Duprey alleges that Mathis' conduct related to the grievance hearing and the harassment investigation constituted a denial of due process. See id. ¶¶ 86-90, at 17-18. Duprey therefore asserts that Mathis is liable for such violations, pursuant to 42 U.S.C. § 1983.

Mathis moves for dismissal based on two main arguments. First, he contends that he enjoys absolute immunity for his actions as chairman of the Grievance Review Board. See Defendant Mathis' Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(6) at 3, filed October 2, 2008 (Doc. 17)("Memo."). Alternatively, Mathis asserts that, under the Rooker-Feldman doctrine, the Court does not have jurisdiction to hear this case. See id. at 5.

Attached to Mathis' Memo. are three exhibits. The first exhibit is a letter to Duprey's counsel from Park, confirming receipt of Duprey's grievance and noticing the hearing on November 16, 2007. See Exhibit A to Memo., Letter from Valerie Park to Dennis Montoya at 1 ("Letter"). The letter gives the time and location of the hearing, the names of the members of the Grievance Committee, and the deadline for witness and exhibit lists. See id. The next two exhibits are orders from the Supreme Court of New Mexico. The first reflects Mathis' appointment as Chairman to the Judicial Branch Personnel Grievance Board, see Exhibit B to Memo., Order at 1 (dated January 1, 2006), and the second memorializes the adoption of the revised Judicial Branch Personnel Rules for Classified and At-will Employees, see Exhibit C to Memo., Amended Order at 1 (dated January 19, 2005)("Amended Order"). Attached to the last exhibit is an excerpt from the New Mexico Judicial Branch Personnel Rules. See Attachment to Amended Order at 47-50 ("Rules").

In her response, Duprey argues that the <u>Rooker-Feldman</u> doctrine does not apply because there is not state-court judgment in this case.  <u>See</u> Plaintiff's Response in Opposition to Defendant Mathis' Motion to Dismiss (Documents 16 and 17) at 2, filed October 16, 2008 (Doc. 26)("Response").  Duprey also argues that there is no allegation in this case that she has attempted to invoke the federal courts' appellate jurisdiction. <u>See id.</u> at 3.  Duprey insists that <u>Rooker-Feldman</u> is therefore inapplicable.  <u>See id.</u>

While she concedes that it is a close question, <u>see</u> id. at 1, Duprey maintains that Mathis should not enjoy absolute immunity, given that she is suing Mathis for actions taken outside his judicial role and in his administrative capacity as a member of an informal personnel-grievance board for court employees.  <u>See id.</u> at 3.  Duprey contends that this grievance board for court employees does not afford the requisite procedural safeguards needed to render it a judicial or quasi-judicial body. <u>See id.</u> at 4.  Duprey cites the New Mexico Judicial Branch Personnel Rules, as those rules are reflected in Exhibit C to the Memo., in support of the proposition that the grievance board is an informal forum.  <u>See</u> Response at 5.  Duprey also notes that, according to the New Mexico Judicial Branch Personnel Rules, a quorum is needed to render a decision, and "since most members of the board are not judges . . . it is not correct to say that these board decisions will necessarily be rendered by judges."  <u>Id.</u> at 5-6.  Duprey contends that, because the decision-makers are not necessarily subject to discipline by the Judicial Standards Commission, there is no proper procedural safeguard in place.  <u>See id.</u> at 6.

Duprey points out two other aspects of the grievance proceeding that, in her view, render it non-judicial.  First, Mathis did not recuse himself, despite having a close working relationship with a key witness.  Second, and, in Duprey's view, most important, there is no right to review the grievance board's decision.  <u>See id.</u>  Duprey insists that the finality of the grievance board's

decisions is a fatal flaw to Mathis' assertion of absolute immunity.  See id. at 6.

Mathis counters that the New Mexico Judicial Branch Personnel Rules afford procedural safeguards sufficient to satisfy due process.  Accordingly, Mathis contends that his actions on the grievance board were sufficiently judicial in nature to entitle him to absolute judicial immunity.  See Reply in Support of Defendant Mathis' Motion to Dismiss at 2, filed October 29, 2008 (Doc. 28)("Reply").  Mathis also takes issue with Duprey's characterization of the grievance board as an informal in-house forum for dispute resolution.  See id.  Rather, Mathis asserts that the grievance board's purpose is to provide an administrative appeal process for an employee who has completed probation, and who has been suspended without pay, demoted, terminated, or who has lost compensation.  See id.  Thus, because the grievance board is designed to protect more than simple workplace conflict, and addresses protected property interests, the grievance board's actions are quasi-judicial in nature.  See id. at 2-3.

At the hearing, Mathis argued that public policy concerns weighed in favor of granting him immunity from suit for his actions on the grievance board.  See Transcript of Hearing at 25:21-26:13 (taken June 18, 2009)(Maynes)("Tr.").[1]  Mathis asserts that immunity is necessary because, otherwise, members of the state judiciary's grievance board potentially face lawsuits every time they make a decision that is adverse to an employee.  See id.  The Court inquired at the hearing whether the grievance board's make-up, which comprises one district court judge, one magistrate court judge, a personnel officer from the public sector other than the judicial branch, a full-time supervisory judicial employee who has completed probation, and a full-time non-supervisory judicial employee who has completed probation, was set by statute.  See id. at 30:7-8 (Court).

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Mathis pointed out that grievance board's composition was set pursuant to Supreme Court rules. See id. at 30:10-21 (Maynes).

## LAW REGARDING MOTIONS TO DISMISS

Under rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. at 570)(alterations omitted).  "Thus, the mere metaphysical possibility

that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the

complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of

mustering factual support for these claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at

1177.  The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct, much
> of it innocent, then the plaintiffs "have not nudged their claims across the line from
> conceivable to plausible."  The allegations must be enough that, if assumed to be
> true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

550 U.S. at 570)(internal citations omitted).

The Supreme Court has recently expounded upon the meaning of Bell Atl. Corp. v.

Twombly.

> Two working principles underlie [the] decision in *Twombly*.  First, the tenet that a
> court must accept as true all of the allegations contained in a complaint is
> inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not suffice. . . .  Second, only
> a complaint that states a plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for relief will . . . be a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense.

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009)(citation omitted).  Additionally, the Supreme

Court has commented:

> In keeping with these principles a court considering a motion to dismiss can choose
> to begin by identifying pleadings that, because they are no more than conclusions,
> are not entitled to the assumption of truth. While legal conclusions can provide the
> framework of a complaint, they must be supported by factual allegations.

Id. at 1950.

A court must convert a motion to dismiss into a motion for summary judgment if "matters

outside the pleading are presented to and not excluded by the court," and "all parties . . . [must be] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d).  Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment.  See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)(citing 27A Fed. Proc., L.Ed. § 62:520 (2003)). Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001). A court may consider documents to which the complaint refers if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002).  If, however, a document is not incorporated by reference or attached to the complaint, but is referred to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably authentic copy to the court to be considered on a motion to dismiss."  GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997). See 5A C. Wright & A. Miller, Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading . . . the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading.").

## RELEVANT LAW REGARDING ABSOLUTE IMMUNITY

It is well established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." Stump v. Sparkman, 435 U.S. 349, 355-56 (1978).  That same immunity continues even if the judge's "exercise of authority is flawed by the

commission of grave procedural errors." Id. at 359.

The Supreme Court has emphasized that a judge's immunity from civil liability "is overcome in only two sets of circumstances.  First, a judge is not immune from liability for nonjudicial acts, *i.e.*, actions not taken in the judge's judicial capacity.  Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11-12 (1991) (citations omitted).  The Supreme Court has also held that absolute judicial immunity was not affected or abolished "by § 1983, which makes liable 'every person' who under color of law deprives another person of his civil rights." Pierson v. Ray,  386 U.S. 547, 554 (1967), overruled in part on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982).

The Tenth Circuit has also recognized that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006)(citing  Butz v. Economou, 438 U.S. 478, 514 (1978)).  For an official at an administrative hearing to enjoy absolute immunity, "'(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct.'" Guttman v. Khalsa, 446 F.3d at 1033 (quoting Horwitz v. State Bd. of Med. Examiners, 822 F.2d 1508, 1513 (10th Cir. 1987)).

In Guttman v. Khalsa, a doctor who suffered from depression and post-traumatic stress disorder appeared before the Impaired Physicians Committee of the New Mexico Board of Medical Examiners to respond to a series of complaints about his professional conduct.  See 446 F.3d at 1030.  The Committee in issued a "Notice of Contemplated Action and Order of Summary

Suspension" of the doctor's medical license based on alleged mental illness and lying to the Committee.  Id.  The New Mexico Board of Medical Examiners then held a hearing, during which one of the defendants acted as Administrative Prosecutor.  See id.  The New Mexico Board of Medical Examiners revoked the doctor's medical license pursuant to its statutory authority to do so. See id.

The doctor in Guttman v. Khalsa appealed the decision to the Seventh Judicial District of New Mexico.  See id.  The Seventh Judicial District of New Mexico denied the appeal, and the doctor then appealed to the New Mexico Court of Appeals.  See id.  After the New Mexico Court of Appeals affirmed, the doctor filed a petition for certiorari with the Supreme Court of New Mexico.  See id.  Before the Supreme Court of New Mexico could act on the petition, the doctor filed a lawsuit in federal court, alleging, among other things, violations of his constitutional rights. See id.

The Tenth Circuit in Guttman v. Khalsa held that the Rooker-Feldman doctrine did not bar the doctor's federal lawsuit, because the state-court lawsuit was not final.  See id. at 1032.  The Tenth Circuit found, however, that the Administrative Prosecutor and the individual who presided over the three-day hearing in front of the New Mexico Board of Medical Examiners enjoyed absolute immunity.  See id. at 1032.  The basis for the presiding hearing officer's immunity was that he had served a quasi-judicial function.  See id. at 1032.

The Tenth Circuit in Guttman v. Khalsa also relied on an earlier case: Horwitz v. State Bd. of Medical Examiners of State of Colo., 822 F.2d 1508 (10th Cir. 1987).  In Horwitz v. State Bd. of Medical Examiners of State of Colo., the Tenth Circuit concluded that members of the State Board of Medical Examiners for the State of Colorado enjoyed absolute immunity for actions it took in filing a formal complaint against a doctor, and in temporarily suspending his right to practice

medicine pending investigations and hearings.  <u>See</u> 822 F.2d at 1510, 1515.  The Tenth Circuit reasoned that the defendant Board members were performing adjudicatory and prosecutorial functions.  <u>See</u> <u>id.</u> at 1515.  The Tenth Circuit also noted:

> There exists a strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation. There exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits. It is important to insulate Board members from political influences in meeting their adjudicatory responsibilities in the adversarial setting involving licensure to practice medicine. Public policy requires that officials serving in such capacities be exempt from personal liability.

<u>Id.</u>  Finally, the Tenth Circuit pointed out the Board members' functions, observing that Board members

> serve in the prosecutorial role in that they, among other things, initiate complaints, start hearings, make investigations, take evidence, and issue subpoenas. They also serve in the adjudicative role, as judges. Thus, the Board duties are "functionally comparable" to a court of law. And we are reminded that, with respect to immunity, we must include all acts of the official performing statutory duties as having "[m]ore or less connection with the general matters committed by law" to his station.

<u>Id.</u>

## <u>STANDARD FOR ISSUING SANCTIONS UNDER RULE 11</u>

Rule 11 of the Federal Rules of Civil Procedure provides:

**(c) Sanctions.**

> **(1) In General.** If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

> **(2) Motion for Sanctions.** A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense,

contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

**(3) On the Court's Initiative.** On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

**(4) Nature of a Sanction.** A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11 (bold in original).   "If after reasonable inquiry, a competent attorney could not form a reasonable belief that [a] pleading is well grounded in fact and is warranted by existing law . . . . then such conduct is sanctionable under Rule 11." Adamson v. Bowen, 855 F.2d 668, 673 (10th Cir. 1988).  The main purpose behind Rule 11 sanctions is misconduct deterrence not defense compensation.  See Kirk Capital Corp. v. Bailey, 16 F.3d 1485, 1490 (8th Cir. 1994); Fed. R. Civ. P. 11(c)(4).  Sanctions are not warranted where there is a minor or tangential misrepresentation by a party. See Carona v. Falcon Services Company, Inc., 72 F. Supp. 2d at 733.  If, considering the "totality of the circumstances," the court finds that the misrepresentation is an honest mistake, sanctions are not warranted. Id.

## ANALYSIS

Mathis' motion to dismiss rests on two primary arguments: (i) that the Rooker-Feldman doctrine bars this lawsuit, and (ii) he has absolute immunity because he acted in a quasi-judicial capacity when he carried out his duties on the grievance board.  The Court finds, that, while the Rooker-Feldman doctrine presents no obstacle to the Court's jurisdiction, the nature of the grievance

board and of Mathis' role on that board counsel in favor of granting Mathis immunity in this case.

The grievance board is quasi-judicial in nature, with procedural protections and a chance for judicial

review.  Moreover, Mathis performed a function similar to that of a judge in participating on the

grievance board as it chairperson.  He is therefore entitled to immunity from suit for acts he

committed while performing that function.  Although the Court finds that Mathis is immune from

suit in this case, the Court will not award him fees or impose sanctions on Duprey because the Court

believes Duprey's claims against Mathis were not frivolous.

**I.     THE COURT WILL NOT CONVERT THIS MOTION TO ONE FOR SUMMARY JUDGMENT.**

Before reaching the question of immunity, there is some underbrush to clear out.  Namely,

given the manner in which the briefing and the arguments at the hearing have played out, the Court

must determine whether to convert this motion to a motion for summary judgment.  Generally, a

court must convert a motion to dismiss into a motion for summary judgment if "matters outside the

pleading are presented to and not excluded by the court," and "all parties . . . [must be] given

reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R.

Civ. P. 12(d).  Although Mathis has presented materials outside the pleadings to support his

arguments, the Court finds that some of those materials are properly subject to judicial notice.  The

Court will not consider the attachments that are not subject to judicial notice.

Mathis attached three exhibits to his Memo. in support of summary judgment.  The first

exhibit, which is a letter to Duprey's counsel notifying her of the November 16, 2008 grievance

hearing and of the deadlines for certain submission pertinent to that hearing, does not present

information upon which the Court needs to rely in deciding this motion.  The Court does not believe

the letter is a matter of public record or is otherwise subject to judicial notice.  The Court will

therefore disregard it for the purposes of deciding this motion.

The other two exhibits, however, provide information that is helpful in deciding whether Mathis should enjoy absolute immunity for performing a quasi-judicial function. Those two exhibits are both orders from the Supreme Court of New Mexico. As court orders, both attachments are appropriate for the Court to consider. One of the orders refers to and has attached to it portions of the New Mexico Judicial Branch Personnel Rules. The court order to which the rules are attached states: "NOW, THEREFORE, IT IS ORDERED that the recommendation hereby is adopted and the revised Judicial Branch Personnel Rules for Classified and At-will Employees, as attached, hereby are APPROVED and ADOPTED." Amended Order at 1.

While there might be a question whether the attachment containing the New Mexico Judicial Branch Personnel Rules, standing alone, represents a document that the Court can notice and rely upon without converting this into a motion for summary judgment, the Court is satisfied that, in this case, the court order incorporates the attachment by reference. See United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)(noting that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")(quoting St. Louis Baptist Temple v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979)). In other words, the rules attached to the order are a part of the order. The Court therefore can notice the order and its attachment without converting this motion to a motion for summary judgment.

Duprey has not objected to any of the exhibits to Mathis' Memo. While Duprey, as an aside, noted that the exhibits were not authenticated, Duprey has not disputed that they are accurate copies. Indeed, Duprey cited the exhibits – particularly the New Mexico Judicial Branch Personnel Rules – in forming her own arguments regarding whether Mathis should have immunity. See, e.g.,

-15-

Response at 5-6 (citing Defendant's Exhibit C, Rules 10.02(A), 10.07(B), 10.07(C), 10.07(D), and 10.08.(D). Duprey has thus relied on the exhibits to some extent. Furthermore, Duprey represented that it was her belief that the Court had the materials it needed to decide, at this time, whether there is absolute immunity. Duprey has stated: "Plaintiff is satisfied that this matter, too [the absolute-immunity issue], may be dispensed with based on the pleadings in Plaintiff's complaint, the prevailing law, and the attachments to Defendant's motion." Response at 1-2 (emphasis added).

Given that Duprey has not objected to the exhibits' authenticity, because she has cited and relied upon them, and because the documents are properly subject to judicial notice as court orders of public record, the Court concludes that it can appropriately consider the two orders, even though the orders are not in the pleadings. In considering the orders, the Court need not convert the motion into a motion for summary judgment. Furthermore, the Court has sufficient information to decide the issues that Mathis has raised in his motion without need for further discovery.

## II.     **THE ROOKER-FELDMAN DOCTRINE IS INAPPLICABLE TO THIS CASE**.

The Supreme Court has characterized Rooker-Feldman as a doctrine that occupies "narrow ground." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2007). According to the Supreme Court, the doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Id. The doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Id.

Exxon Mobil Corp. v. Saudi Basic Industries Corp. makes clear that the Supreme Court does not intend to expand or extend the Rooker-Feldman doctrine beyond the fact patterns to which it has

been applied.  Moreover, the Supreme Court has held that the <u>Rooker-Feldman</u> doctrine "has no application to judicial review of executive action, including determinations made by a state administrative agency."  <u>Verizon Maryland, Inc. v. Public Service Commission of Maryland</u>, 535 U.S. 635, 644 n. 3 (2002).  The Tenth Circuit held that the <u>Rooker-Feldman</u> doctrine does not apply to determinations made by the a property valuations protest board, whose authority was defined under New Mexico statute.  <u>See</u> <u>Jicarilla Apache Nation v. Rio Arriba County</u>, 440 F.3d 1202, 1206 (10th Cir. 2006).  In so holding, the Tenth Circuit reasoned that "the <u>Rooker-Feldman</u> doctrine does ot apply to judicial review of state agency decisions."

In this case, the underlying action was a personnel-grievance proceeding.  Rather than a state-court final judgment, Duprey's suit arises from the determination of the grievance board, which more closely resembles a state agency than a state court.  Accordingly, there is no state-court loser trying to convince this Court to override or invalidate an unfavorable state-court judgment.  There is no state-court action or state-court judgment.  Indeed, Duprey accepts the result of the Defendants' actions and argues that the procedure violated her constitutional rights under § 1983.  To use <u>Rooker-Feldman</u> to bar Duprey's suit would represent an improper extension of the doctrine.  The Court declines the invitation to make such an extension in this case.  Rather, the Court will take jurisdiction and will decide this motion on its merits.

**III.  <u>MATHIS IS ENTITLED TO IMMUNITY.</u>**

Mathis insists that he should be immune from suit in this case because he was acting in a quasi-judicial capacity.  He cites <u>Guttman v. Khalsa</u> as providing the framework for finding him immune.  He also asserts that the facts of <u>Guttman v. Khalsa</u>, which involved a state's Board of Medical Examiners, are analogous to the facts of this case and that those facts compel similar results.  After reviewing the law, the nature of the grievance board, and Mathis' function on that

board, the Court agrees and finds that Mathis enjoy absolute immunity under the circumstances presented in this case.

**A.    THE TENTH CIRCUIT'S TEST IN GUTTMAN V. KHALSA IS THE APPLICABLE LAW.**

There is no serious contention that Mathis enjoys immunity by virtue of his position as a judge.  Rather, Mathis argues that, on the grievance board, he was serving in a quasi-judicial function.  Given this assertion, the Court agrees that Guttman v. Khalsa provides the starting point for the analysis.  An application of the principles set forth in Guttman v. Khalsa leads the Court to conclude that the grievance board is a quasi-judicial body and that Mathis' role on that board was similar to what a judicial officer would do.

In Guttman v. Khalsa, the Tenth Circuit cited and relied on an earlier case that established the principle that the State Board of Medical Examiners enjoyed immunity for quasi-judicial acts associated with disciplining or de-licensing doctors.  That case was Horwitz v. State Bd. of Medical Examiners of State of Colo., another Tenth Circuit case.  See Guttman v. Khalsa, 446 F.3d at 1027. In turn, the Tenth Circuit in  Horwitz v. State Bd. of Medical Examiners of State of Colo. was applying the rationale of  Butz v. Economou, 438 U.S. 478 (1978).

In Butz v. Economou, the Supreme Court held that "adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that those who participate in such adjudication should be immune from suits for damages."  Butz v. Economou, 438 U.S. at 513.  The Supreme Court in Butz v. Economou reasoned that "conflicts which federal hearing examiners seek to resolve are every bit as fractious as those which come to court," given that, "[w]hen the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of numerous parties, the disappointment

occasioned by an adverse decision, often finds vent in imputations of [malice]." Id. (quoting

Bradley v. Fisher, 80 U.S. 335, 348 (1871))(second alteration in Butz v. Economou). The Supreme

Court also stated that the role of a federal-hearing examiner or an administrative-law judge was

"functionally comparable" to that of a judge. Butz v. Economou, 438 U.S. at 513. Moreover, the

administrative-law judge's

> His powers are often, if not generally, comparable to those of a trial judge: He may
> issue subpoenas, rule on proffers of evidence, regulate the course of the hearing, and
> make or recommend decisions. . . . More importantly, the process of agency
> adjudication is currently structured so as to assure that the hearing examiner
> exercises his independent judgment on the evidence before him, free from pressures
> by the parties or other officials within the agency.

Butz v. Economou, 438 U.S. at 513.

The Tenth Circuit, in Horwitz v. State Bd. of Medical Examiners of State of Colo.,

recognized that the rationale from Butz v. Economou applies in cases involving state administrative

and executive officials serving in adjudicative, judicial, or prosecutorial capacities. See Horwitz v.

State Bd. of Medical Examiners of State of Colo., 822 F.2d at 1515. The Tenth Circuit in Horwitz

v. State Bd. of Medical Examiners of State of Colo. explained that it would be untenable to

distinguish, for purposes of immunity law, between suits brought against state officials under 42

U.S.C. § 1983 and suits brought directly under the Constitution against federal officials. See

Horwitz v. State Bd. of Medical Examiners of State of Colo., 822 F.2d at 1515.

Based on such reasoning, the Tenth Circuit has formulated a test which states that, for an

official at an administrative hearing to enjoy absolute immunity, "'(a) the officials' functions must

be similar to those involved in the judicial process, (b) the officials' actions must be likely to result

in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the

regulatory framework to control unconstitutional conduct.'" Guttman v. Khalsa, 446 F.3d at 1033

(quoting Horwitz v. State Bd. of Med. Examiners, 822 F.2d at 1513).  All three parts of the test from Guttman v. Khalsa appear to weigh in favor of immunity here.  The Court believes that the reasoning underlying Butz v. Economou, Horwitz v. State Bd. of Medical Examiners of State of Colo., as encapsulated in the test from Guttman v. Khalsa, applies in the context of this case as well.

### B.   MATHIS' FUNCTION WAS SIMILAR TO ONE INVOLVED IN THE JUDICIAL PROCESS.

The hearing that Duprey had in front of the grievance board resembles an administrative hearing in many respects.  It was adversarial in nature, and involved the presentation of evidence and the examination of witnesses.  At the hearing, the grievance board listened to evidence, including, presumably, evidence that Duprey was allowed to proffer in support of her contention that the demotion was improper.  At the end of the proceeding, the grievance board had to make a determination.  The grievance hearing was therefore judicial in nature.  The Court views Mathis' role on that board as one similar to that of an administrative judge or a hearing officer, and the case law establishes that such individuals receive immunity.

The New Mexico Judicial Branch Personnel Rules establish the purpose of the grievance board: "To provide an administrative appeal process for an employee who has completed probation and who has been suspended without pay, demoted, terminated or lost compensation."  New Mexico Judicial Branch Personnel Rules § 10.01, at 47.  When an employee files a grievance to appeal an action such as a demotion, the employee "shall be free from any restraint, interference, coercion, discrimination and/or retaliation resulting from filing the grievance."  Id. § 10.04, at 48.  Mathis, the chairperson, was required to conduct the hearing and administer oaths to all witnesses.  See id. § 10.07(A), at 49.  Furthermore, the rules require that the hearing be recorded.  See id., § 10.07(C), at 49.  Moreover, to further establish the judicial character of the proceedings, the rules require:

     D.     The hearing shall be conducted in an orderly and informal manner without strict adherence to The New Mexico Rules of Evidence.  The *Administrative Authority* shall have the burden of proof by a preponderance of the evidence.

     E.     The order of the hearing shall be:

        (1)    opening statements:

            a.     by *Administrative Authority*

            b.     by Grievant

        2.    presentation of case:

            a.     by *Administrative Authority*

            b.     by Grievant

        3.    rebuttal and surrebuttal

        4.    closing statements:

            a.     by *Administrative Authority*

        b.     by Grievant

Id. §§ 10.07(D) to 10.07(E), at 49-50 (italics in original).  Duprey emphasizes the informal nature of the proceeding.  Indeed, the New Mexico Judicial Branch Personnel Rules use the phrase "informal" to describe the proceedings.  Nevertheless, the Court believes the main point of referring to the proceeding as informal is to underscore that parties need not strictly adhere to the rules of evidence.  The hearing must still be conducted in an orderly fashion, with parties being allowed to take their turn making opening arguments, putting on a case, and making closing statements.  Witnesses are placed under oath – a fact that demonstrates that the grievance hearings are serious matters with a judicial flavor.  The hearings are not ragtag affairs, even if the rules of evidence are relaxed.

     To reach a decision, the grievance board "shall retire into an *executive session* to deliberate,"

and "shall issue its written decision . . . ." Id. § 10.08, at 50 (italics in original).  This deliberative process outside the presence of the parties furthers the notion that Mathis, as part of the deliberative body, was acting in a quasi-judicial capacity.  The fruit of the deliberation is a written decision that contains findings of fact, and either an order for remedial action or denial of the grievance.  See id. § 10.08 (C), at 50 ("No later than 10 *business days* after conclusion of the hearing, the Board shall issue its written decision which shall remain confidential unless waived by the *employee*, and shall provide copies to the parties.")(emphasis in original).

Mathis served as chairman.  The Supreme Court of New Mexico appointed him to his position.  In a sense, he was the presiding judge on a panel hearing Duprey's grievance.  The Court therefore concludes that, overall, Mathis' participation on the grievance board was similar to acts taken in a judicial capacity.

### C.   MATHIS' ACTIONS WERE LIKELY TO RESULT IN DAMAGES LAWSUITS BY DISAPPOINTED PARTIES.

The second part of the Guttman v. Khalsa test also counsels in favor of immunity.  There was some risk that a disgruntled party would have a desire to sue based on an unfavorable outcome.  See Guttman v. Khalsa, 446 F.3d at 1033.  The Supreme Court in Butz v. Economou pointed out that, "[w]hen the controversy involves questions affecting large amounts of property or relates to a matter of general public concern, or touches the interests of numerous parties, the disappointment occasioned by an adverse decision, often finds vent in imputations of [malice]."  Id.  (quoting Bradley v. Fisher, 80 U.S. at 348)(second alteration in Butz v. Economou).  While Duprey's demotion is not a matter of general public concern, or one that touches upon the interests of several parties, the demotion impacts her employment and her prospects for future advancement.  The demotion therefore affects a significant property interest of the kind contemplated in Butz v.

Economou.  It is not difficult to imagine that an individual who has availed herself of the procedural mechanisms – including a grievance hearing before a grievance board convened according to the rules of the Supreme Court of New Mexico – would be disgruntled in the event that the grievance board violated her rights and treated her unfairly on account of her race or gender.  In such a situation, an employee might seek to sue for damages.

Accordingly, individuals like Mathis, who perform the task of sitting on the grievance board and rendering decisions, are exposed to potentially costly lawsuits.  Such exposure might put a thumb on the scale at the moment in which they are called upon to exercise discretion or judgment. Immunity is designed to prevent such influence on their decision.  The Supreme Court has noted: "[A] general principle of the highest importance to the proper administration of justice [is] that a judicial officer, in exercising the authority vested in him, [should] be free to act upon his own convictions, without apprehension of personal consequences to himself."  Stump v. Sparkman, 435 U.S. at 355 (quoting Bradley v. Fisher, 80 U.S. at 347)(second alteration in Stump v. Sparkman). Such judicial independence is paramount in cases involving large amounts of property or relating to general matters of public concern.  See Bradley v. Fisher, 80 U.S. at 347.  After all, an officer sitting on the grievance board, like any other hearing officer or administrative law judge, must make judgments between competing parties, and must, at times, pick winners and losers.  If an employee happens to be the one who should lose, the hearing officers should not fear saying so on threat of reprisals in the form of lawsuits.

Given that Mathis was required, as part of a panel, to make a judgment regarding whether the Administrative Authority had carried its burden of proof of establishing by the preponderance of the evidence that the demotion was valid, protecting Mathis from civil suit would serve the interest of protecting Mathis' ability to impartially make that judgment.

### D.   SUFFICIENT SAFEGUARDS TO THE GRIEVANCE PROCESS EXIST TO CONTROL UNCONSTITUTIONAL CONDUCT.

The third part of the Guttman v. Khalsa test asks whether there are sufficient protections in the regulatory framework to control unconstitutional conduct.  An examination of the procedural protections afforded to Duprey demonstrates that checks are in place to prevent or mitigate unconstitutional conduct.  This part of the test therefore also tips in Mathis' favor.

While the fact almost escapes discussion, the first safeguard is that, Mathis, in his day-to-day job, is a sitting state-court judge.  While he is not seeking immunity in this case because he is a state district judge, the Supreme Court appointed a judge – not a lay person – to be the chairman of the grievance board.  As a judge and a law-school trained attorney, Mathis no doubt is sensitive to due-process issues.  Thus, that the chairperson is an individual who knows the distinction between constitutional and unconstitutional conduct.

Duprey's major point of contention is that finality of the grievance board's decision is fatal to Mathis' immunity argument.  Specifically, Duprey argues that the lack of an appeal beyond the grievance board's decision indicates that the grievance hearing is removed from the judicial process and does not afford adequate protections against constitutional violations.  Duprey's arguments notwithstanding, it appears that the grievance board has a framework in place to prevent constitutional violations.  See Butz v. Economou, 438 U.S. at 514 (noting that "the safeguards built into the judicial process tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.").  Thus, like the plaintiff in Guttman v. Khalsa, Duprey had access to a process of judicial review outside the State Board of Medical Examiners.  See Guttman v. Khalsa, 446 F.3d at 1030.  The plaintiff in Guttman v. Khalsa appealed the State Board of Medical Examiners' decision to the Seventh Judicial District Court of New Mexico.  See id.  Similarly, while

the grievance board's decision, according to the New Mexico Judicial Branch Personnel Rules, was final, see New Mexico Judicial Branch Personnel Rules § 10.08(D), at 50 ("The decision of the Board shall be final."), it appears that the New Mexico Rules of Civil Procedure provide an outlet for judicial review of the grievance board's final determinations.

Mathis calls to the Court's attention rule 1-075(B) of the Rules of Civil Procedure for the District Courts of New Mexico, which provides:

> An aggrieved party may seek review of a final decision or order of an agency by (1) filing a petition for writ of certiorari in the district court with proof of service; and (2) promptly filing with the agency a copy of the petition for writ of certiorari that has been endorsed by the clerk of the district court.

NMRA 1-075 (2002). Mathis contends that Duprey did not pursue the certiorari review in the district court, and that the language of the rule, along with the tape record, provided her an avenue to do so. See Letter from Paula G. Maynes to the Court at 1-2 (dated June 25, 2009).

The Court sees merit in the contention that a potential outlet for judicial review represents a procedural protection that would increase the likelihood of finding that the grievance board's members are entitled to immunity. It is therefore important to determine whether rule 1-075 affords such an outlet, and whether a writ of certiorari is available for review of a final decision from the grievance board. The Court believes rule 1-075 provides such an avenue of review.

Rule 1-075 allows parties to seek the writ to review final decisions by an "agency," and defines agency as "any state or local government administrative or quasi-judicial entity." NMRA 1-075 (A). On its face, rule 1-075 applies only to government administrative or quasi-judicial entities. New Mexico case law supports the proposition that the grievance board would constitute an administrative or quasi-judicial body whose decisions could be reviewed pursuant to a writ of certiorari to a district court.

-25-

In <u>Archuleta v. Santa Fe Police Dept. ex rel. City of Santa Fe</u>, 137 N.M. 161, 108 P.3d 1019 (2005), the Supreme Court of New Mexico granted a petition for certiorari in a case that originated in the City of Santa Fe's personnel grievance board.  <u>Id.</u> at 167, 108 P.3d at 1025.  In <u>Archuleta v. Santa Fe Police Dept. ex rel. City of Santa Fe</u>, the City grievance board sustained a police officer's demotion, after which the officer filed a petition for certiorari in the state district court.  <u>See</u> <u>id.</u>, 108 P.3d at 1025.  The district court affirmed the City grievance board, and the case proceeded to the New Mexico Court of Appeals and then to the Supreme Court of New Mexico by way of petitions for certiorari to each court.  <u>See</u> <u>id.</u>, 108 P.3d at 1025.

The Court sees no sound reason to distinguish between the City of Santa Fe's personnel grievance board, whose final determination was reviewable by writ of certiorari, and the New Mexico judicial branch's personnel grievance board.  The boards serve the same function – to hear grievances brought by employees who have suffered demotions, suspensions, or similar unfavorable employment actions.  If the employee could petition for writ of certiorari pursuant to rule 1-075 after a final decision from the City grievance board, it is likely that the same opportunity was available to Duprey.

A district court would therefore have the ability to grant a writ of certiorari if it saw the need to do so after reviewing a petition.  As <u>Archuleta v. Santa Fe Police Dept. ex rel. City of Santa Fe</u> demonstrates, Duprey would have also had the opportunity to seek further review from the New Mexico Court of Appeals and from the Supreme Court of New Mexico.  A party who believes he or she has suffered constitutional violations in the grievance hearing therefore has access to complete judicial relief.  The existence of such a protection brings the grievance board's actions into the zone of those administrative agency and hearing officers contemplated in <u>Butz v. Economou</u>.

Duprey argues that, in her case, there were several procedural failures that undermined her case, and suggests that the grievance hearing was not quasi-judicial and lacked adequate protections. Taking Duprey's allegations as true, as it must, the Court believes the existence of such failings in one case does not undermine the conclusion that the grievance board and its officers were performing a quasi-judicial function.  The failure to follow required procedures, such as making a recording, is something that the certiorari review process is designed to remedy.  Thus, the failings that Duprey alleges occurred in the grievance hearing could be remedied in the New Mexico court system if those failings amounted to violations of Duprey's rights.

Mathis also argues that there is a good public-policy reason for affording him immunity for acts taken as chairman of the grievance board.  He contended at the hearing that, without immunity, for every instance in which the New Mexico judicial branch takes personnel action, the chairperson of the grievance board faces potential lawsuits by parties who feel that they were wronged.  See Tr. at 25:21-26:12 (Maynes).  There is merit to this contention.  The New Mexico judiciary may, at times, need to take unfavorable action against an employee for legitimate reasons.  The employees subject to such action benefit from a grievance process that culminates in a full grievance hearing. The grievance board presiding over such a hearing is a necessary part of that process and should not be afraid to carry out its duties because of potential civil liability for decisions that disfavor the aggrieved employee.

The Court recognizes that one procedural protection that the Supreme Court mentions in Butz v. Economou is the administrative-law judge's ability to issue subpoenas.  See 438 U.S. at 513. The subpoena power affords an important protection to litigants, giving them the ability to compel witnesses and evidence that might not otherwise be accessible to them.  The New Mexico Judicial Branch Personnel Rules do not appear to furnish a subpoena power to the grievance board.  Even

so, most witnesses at judicial branch personnel grievance hearings will usually be other judicial branch employees, given that the grievances are employment-related.  The grievance board is therefore unlikely to need a contempt power to get the relevant witnesses into the grievance hearing.

Admittedly, the apparent lack of a subpoena power is an important limitation on the grievance board's ability to ensure constitutional due process.  Notwithstanding such a limitation, the balance of the protections afforded to Duprey convince the Court that the grievance hearing was quasi-judicial in nature.  The Supreme Court of New Mexico appoints the grievance board, and is required to select judges to fill two of the five seats on the grievance board.  See New Mexico Judicial Branch Personnel Rules § 10.02, at 47.  Presumably to protect against internal bias, the rules require that a public employee from outside the judicial branch occupy one seat on the grievance board.  See id.  Grievants receive an adversarial hearing in which all parties are entitled to formal notice.  See id. § 10.06, at 49.  Parties submit witness lists and exhibits, a record is made, and decisions are rendered after the grievance board hears evidence, retires, deliberates, and delivers a written disposition.  See id. §§ 10.07-10.08, at 49-50.  Finally, grievants have access to complete judicial review, by way of a petition for certiorari with the state district court.  See NMRA 1-075.  Thus, even without an official subpoena power, it would be a stretch of the facts and of the law to conclude that the grievance hearing was not quasi-judicial.

## IV.    THE COURT WILL NOT GRANT RULE 11 SANCTIONS AGAINST DUPREY'S ATTORNEY AND WILL NOT AWARD MATHIS ATTORNEY'S FEES.

In his motion to dismiss, Mathis asks for his attorneys fees pursuant to 42 U.S.C. § 1988, and for sanctions against Duprey's attorney pursuant to rule 11.  Mathis' insists that such sanctions are warranted for Duprey filing and prosecuting "a frivolous lawsuit against him."  Motion at 2.  The Court disagrees with Mathis.

-28-

A.    THERE IS NO SOUND REASON TO SHIFT COSTS FOR THIS MOTION
      PURSUANT TO 42 U.S.C. § 1988.

"It is the general rule in the United States that in the absence of legislation providing

otherwise, litigants must pay their own attorney's fees." Christianburg Garment Co. v. EEOC, 434

U.S. 412, 415 (1978).  Nevertheless, 42 U.S.C. § 1988 provides that, for actions brought under 42

U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United

States, a reasonable attorney's fee as part of the costs. . . ."  42 U.S.C. § 1988.

"While a prevailing plaintiff ordinarily is entitled to attorney fees, a prevailing defendant

in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought

to harass or embarrass the defendant."  Mitchell v. City of Moore, 218 F.3d 1190, 1203 (10th Cir.

2000)(citations and internal quotations omitted).  "[R]arely will a case be sufficiently frivolous to

justify imposing attorney fees on the plaintiff."  Id. (citing Clajon Prod. Corp. v. Petera, 70 F.3d

1566, 1581 (10th Cir. 1995)).  The fact that a district court dismissed a plaintiff's case on summary

judgment does not automatically entitle a prevailing defendant to attorney's fees.  See Mitchell v.

City of Moore, 218 F.3d at 1203  (citing Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995)).

If the losing plaintiff's case was vexatious, frivolous, or brought to harass or embarrass the

defendant, the court can award fees even if the plaintiff did not bring his case in bad faith.  See

Clajon Prod. Corp. v. Petera, 70 F.3d at 1581 (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980)).  The

Supreme Court has warned district courts against engaging

> in post hoc reasoning by concluding that, because a plaintiff did not ultimately
> prevail, his action must have been unreasonable or without foundation. This kind of
> hindsight logic could discourage all but the most airtight claims, for seldom can a
> prospective plaintiff be sure of ultimate success. No matter how honest one's belief
> that he has been the victim of discrimination, no matter how meritorious one's claim
> may appear at the outset, the course of litigation is rarely predictable. Decisive facts
> may not emerge until discovery or trial. The law may change or clarify in the midst
> of litigation.  Even when the law or the facts appear questionable or unfavorable at

the outset, a party may have an entirely reasonable ground for bringing suit.

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)(discussing awards to prevailing defendants in Title VII cases).  See Jane L. v. Bangerter, 61 F.3d at 1513 (recognizing that the Supreme Court adopted Christiansburg Garment Co. v. EEOC's reasoning for attorney's fees under § 1988 in Hensley v. Eckerhart, 461 U.S. 424, 429 n.2 (1983)).  Subjective bad faith is not part of the attorney's fees analysis.

Although the Court has decided to dismiss Duprey's claims against Mathis, it disagrees with the contention that the claims against Mathis were frivolous.  Both parties vigorously presented non-frivolous arguments to support their respective positions.  There was no controlling case law directly on point that compelled the Court to grant Mathis immunity.  Moreover, the Court gave considerable thought and energy to the question whether Mathis was entitled to immunity for his role on the grievance board, and did not consider it to be a settled question.  This case did not present the rare class of frivolous claim that would support fee shifting.  See Mitchell v. City of Moore, 218 F.3d at 1203.

The Court also believes that Duprey is pursuing her lawsuit in good faith, and for purposes other than harassment or vexation.  "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." Christiansburg Garment Co. v. EEOC, 434 U.S. at 421-22.  In this case it would seem reasonable to attempt to sue an member of the grievance board, even if it seemed, ab initio, like a difficult proposition.  The Court does not believe there is a need to punish Duprey for bringing her claim and testing the law in an unsettled area.  The Court will therefore exercise its discretion and deny the request for attorney's fees under 42 U.S.C. § 1988.

-30-

**B.    RULE 11 SANCTIONS ARE INAPPROPRIATE HERE.**

The request for sanctions under rule 11 comes, like the request for attorney's fees, under the justification that the lawsuit against Mathis was frivolous. Again, the Court finds that the lawsuit was brought in good faith and that the claims were reasonable. Rule 11 sanctions are therefore inappropriate in this case.

Rule 11 states:

**(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11 (bold in original). Mathis brings nothing to the table to show that Duprey's lawsuit was brought with an improper purpose, such as harassment, or to increase the costs of litigation. Furthermore, there is no indication of misconduct, such as misrepresentations, that would warrant sanctions. See Kirk Capital Corp. v. Bailey, 16 F.3d at 1490. In litigating these claims against Mathis, both parties have made various arguments, with some arguments being stronger than others. Perhaps the claim against Mathis was a stretch of existing law. Even so, it was not

unreasonable or frivolous for Duprey to pursue it.

Besides lacking substantive merit, Mathis' request for rule 11 sanctions is procedurally deficient. Rule 11 requires parties seeking sanctions to do so in a separate motion. See Fed. R. Civ. P. 11(c)(2). Moreover, "[t]he motion must be served under Rule 5, but it most not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Id.

Rather than following the prescribed method for a rule 11 motion, Mathis tagged his request for rule 11 sanctions onto the end of his motion to dismiss. Mathis also bypassed the safe-harbor procedure. Mathis' failure to adhere to proper procedures and to provide the safe harbor represent additional reasons for the Court to deny the motion for sanctions.

In conclusion, the Court finds that the Rooker-Feldman doctrine is no bar to this lawsuit, given that Duprey is not a state-court loser attempting to persuade this Court to alter or invalidate a state-court judgment. Having taken jurisdiction, the Court concludes that Mathis was acting in quasi-judicial capacity when he chaired the grievance board. Mathis is therefore entitled to immunity from suit.

**IT IS ORDERED** that Defendant Mathis' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) is granted in part and denied in part. The Court will dismiss the claims against Defendant Eugenio S. Mathis, but will not impose attorney's fees or sanctions.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho, New Mexico

> *Attorneys for the Plaintiff*

Paula Grace Maynes
Miller Stratvert P.A.
Santa Fe, New Mexico

> *Attorney for the Defendants*