# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

KAREN E. DUPREY,

       Plaintiff,

vs.                                        No. CIV 08-0756 JB

TWELFTH JUDICIAL DISTRICT COURT,
State of New Mexico; HON. KAREN L. PARSONS,
Individually and in her official capacity as
Chief Judge, Twelfth Judicial District
Court, State of New Mexico; HON. EUGENIO S. MATHIS,
Individually, and in his official capacity as
Chairperson of the Judicial Grievance Board
convened at Santa Fe, New Mexico on Friday,
November 16, 2007 and re-convened on
5 December 2007; JAN PERRY,
Individually and in her official capacity as
Court Administrator, Twelfth Judicial District
Court, State of New Mexico; LORRI A. HATCHER,
Individually and in her official capacity as
Director, New Mexico Administrative Office
of Courts, Human Resources Division;
and VALERIE PARK, Individually and in her official capacity as
Project Manager, New Mexico Administrative
Office of the Courts Human Resources Division;

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Motion To Dismiss Pursuant to F.R.C.P.

12(b)(6) by Defendants Parsons and Perry, filed October 15, 2008 (Doc. 22). The Court held a

hearing on June 18, 2009. The primary issues are: (i) whether the Defendants, Honorable Karen L.

Parsons, Chief Judge of the Twelfth Judicial District Court for Lincoln and Otero Counties, and Jan

Perry, are subject to individual liability under Title VII of the Civil Rights Act of 1964 and under

the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621-34; (ii) whether the Court

should afford Parsons absolute quasi-judicial immunity from suit for giving testimony at Plaintiff Karen E. Duprey's grievance hearing on November 16, 2007; (iii) whether Parsons and Perry were "acting for" Duprey's employer such that they are individually liable under the New Mexico Human Rights Act, NMSA 1978 §§ 28-1-1 to 28-1-15 ("NMHRA"); (iv) whether any of Parsons' or Perry's actions gave rise to violations of Duprey's procedural-due process rights; (v) whether the Court should dismiss the equal-protection claims against Parsons and Perry because it is based on a class-of-one theory; (vi) whether the Court should dismiss the punitive-damages claims against Parsons and Perry; and (vii) whether the Court should award attorney's fees to Parsons and Perry because Duprey's claims are frivolous.

## FACTUAL BACKGROUND

The facts leading up to this lawsuit – which, for purposes of this motion, the Court will assume are true –  are laid out in previous opinions and orders.  See Memorandum Opinion and Order at 2-5, entered July 27, 2009 (Doc. 58)("July 27 MOO"); and Memorandum Opinion and Order at 2-3, entered July 14, 2009 (Doc. 48)("July 14 MOO").  As relevant to this motion, Duprey was an employee of the Twelfth Judicial District Court for the State of New Mexico.  See Complaint for Employment Discrimination and Retaliation and for Deprivation of Civil Rights Under Color of State Law ¶ 2, at 2, filed August 18, 2008 (Doc. 1)("Complaint").  She began working for the Twelfth Judicial District Court on August 31, 1995.  See id. ¶ 34, at 8.

In 2000, Duprey competed for the position of Court Administrator.  See id. ¶ 36, at 8. Although she alleges that she was highly qualified for the position, Duprey did not receive the promotion.  See id. ¶ 36, at 8.  Rather, Perry, whom Duprey contends was less qualified, received the job, and "from the outset exhibited jealousy and antipathy toward [Duprey], and directly and indirectly encouraged younger employees and minority employees working under [Duprey] to

-2-

exhibit insubordination and discontent."  Id. ¶ 36, at 8.

In her capacity as Court Administrator, Perry was one of Duprey's supervisors, and was, during most of the events giving rise to this lawsuit, Duprey's immediate supervisor.  See id. ¶ 18, at 5.  Although Duprey's Complaint encompasses a series of events involving various Defendants, she has made various allegations that are specifically directed at Parsons and Perry.  According to those allegations, on or about November 17, 2006, Duprey was sent home until December 6, 2006 because of allegations that one of her subordinates made against her.  See id. ¶ 37, at 8.  Duprey maintains that Parsons and Perry were involved in this event.  See id.

A few months later, Parsons and Perry gave Duprey a "needs improvement" evaluation, which resulted in Duprey being denied a pay raise.  Id. ¶ 38, at 9.  Duprey further alleges that Parsons and Perry "subjected [her] to humiliating, degrading and demeaning interrogations regarding unfounded allegations and complaints made against her by [Duprey's] subordinates, all of whom were Hispanic, and all of whom had banded together against [her]."  Id. ¶ 38, at 9.

Duprey alleges that Parsons and Perry actively solicited unfair and unfounded complaints against the her by her subordinates, encouraged antagonistic attitudes, failed and refused to support her in the exercise of her supervisory duties and authority, undermined her, and generally created an atmosphere of harassment and hostility against her.  See id. ¶ 40, at 9.  Duprey also alleges that Perry supported and encouraged Parsons in reprimanding Duprey.  See id. ¶ 41, at 9-10.  Ultimately, according to Duprey, Parsons wrote to Duprey on June 28, 2007: "I propose to demote you from your position of Judicial Manager (Salary Grade JJ) to a Clerk 3 (Salary Grade GG)."  Id. ¶ 42, at 10.  Acting on Perry's advice and support, Parsons made Duprey's demotion to Clerk 3 effective. See id. ¶ 43, at 10.

## PROCEDURAL BACKGROUND

Duprey filed her Complaint in the United States Court for the District of New Mexico on August 18, 2008. Duprey acknowledges that Counts I and III, which reflect claims for employment discrimination in violation of Title VII of the Civil Rights Act of 1964 and for employment discrimination in violation of the Federal Age Discrimination in Employment Act, sound only against the employer, and not against Perry and Parsons. See Plaintiff's Response in Opposition to Defendants Parsons and Perry's Motion to Dismiss at 1, filed November 4, 2008 (Doc. 31)("Response"). Although Duprey stipulates that Counts I and III do not sound against Perry and Parsons, she nevertheless contends that five other claims survive: (i) Count II, for discrimination in violation of the NMHRA, see Complaint ¶¶ 65-68, at 14; (ii) Count V, for employment retaliation in violation of the NMHRA, see Complaint ¶¶ 77-80, at 16; (iii) Count VI, for denial of equal protection, adverse-employment actions, harassment, and retaliation, see Complaint ¶¶ 81-85, at 16-17; (iv) Count VII, for denial of due-process stemming from the conduct of the grievance hearing and the harassment investigation, see Complaint ¶¶ 86-90, at 17-18; and (v) Count VIII, for punitive damages against, among others, Parsons and Perry, see Complaint ¶¶ 91-94, at 18-19.

As grounds for the dismissal, Parsons and Perry insist that, under Haynes v. Williams, 88 F.3d 898 (10th Cir. 1996), there is no individual liability under Title VII of the Civil Rights Act, or, by analogy, under the Age Discrimination in Employment Act. See Memorandum in Support of Motion to Dismiss Defendants Parsons and Perry at 2 and 5, filed October 15, 2008 (Doc. 23)("Memo."). Perry and Parsons contend that NMHRA claims are similarly barred against individuals. See id. Regarding the constitutional claims, Parsons and Perry reiterate the argument from past motions that the equal-protection claim must fail because it is pleaded under the non-viable class-of-one theory. See id. at 3 and 5. Parsons and Perry contend that Perry, like Parsons,

-4-

played no role in conducting the grievance hearing or the grievance investigation.  See id. at 5.

Parsons and Perry also assert certain defenses specific to the claims against Parsons.  First, they argue that Parsons is absolutely immune from civil suit for the testimony she offered at the grievance hearing convened on November 16, 2007.  See id. at 3.  Next, they argue that the due-process claim is inapplicable to Parsons because Parsons did not play any role in conducting either of the two events upon which the due-process claims is founded – namely, the grievance hearing and the internal-grievance investigation.  See id.  All Parsons did with respect to those two events, according to Parsons and Perry, was testify at the grievance hearing.  See id.  They insist that she did not play an investigative or supervisory role in the internal-grievance investigation.  See id.

Parsons and Perry contend that, because all of the counts against them fail to state a claim, there is no independent basis for awarding punitive damages.  Accordingly, they urge the Court to dismiss Count VIII, which pleads punitive damages.  See id. at 5.  Finally, Parsons and Perry insist that they are entitled to attorney's fees because there was no sound basis in the law for the claims that Duprey has brought against them.  See id. at 5.

Duprey responds that, while the Defendants are correct that Counts I and III are properly stated against only the employer, Counts II, V, VI, VII, and VIII are properly stated against Hatcher and Park.  See Response at 1.  Duprey argues that individual supervisors can be sued for civil rights violations under the NMHRA because the NMHRA defines employer as "any person employing four or more persons and any person acting for an employer."  Response at 1-2 (internal quotation marks and citations omitted).  Duprey also argues that, by incorporating the preceding paragraphs of her Complaint into Count IV, she has pled a class-based claim for equal protection.  See Response at 2.

Duprey asserts that Parsons and Perry played an improper and abusive role in grievance

proceedings.  See id. at 3.  Duprey argues that Parsons' argument for witness immunity is unfounded

because there is no immunity for witness misconduct during an informal administrative proceeding.

See id.  Duprey also maintains that her punitive-damages claim is viable because she has stated §

1983 claims against the defendants.  See Response at 3.

      In reply, Parsons and Perry argue that the Complaint makes no allegations unique to Judge

Parsons that would support a finding of intentional discriminatory motive.  See Defendants Parsons

and Perry's Reply in Support of Motion to Dismiss at 1, filed November 24, 2008 (Doc. 34).  Perry

and Parsons otherwise reaffirm their arguments regarding immunity and the lack of individual

liability under the NMHRA.  See id.

      At the hearing, Duprey argued that her claims against Perry are based, not merely on Perry's

testimony at the grievance hearing, but for other actions as well.  See Tr. at 52:13-53:9 (Montoya).

Duprey stated that she is suing Perry for taking action to make Duprey's demotion effective, and for

soliciting and encouraging, along with Parsons, false statements against Duprey.  See id.  Duprey

therefore maintained that she was not suing Perry for her testimony, and that the references in the

Complaint to Perry's testimony were present more to demonstrate the significance of the loss of the

record, and not to serve as the foundation for the claims against Perry.  See id.

## RELEVANT LAW REGARDING MOTIONS TO DISMISS

      Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which

relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The nature of a Rule 12(b)(6) motion tests the

sufficiency of the allegations within the four corners of the complaint after taking those allegations

as true."  Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint

is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must

accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light

most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006); Hous. Auth. of Kaw Tribe v. City of Ponca City, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint challenged by a rule 12(b)(6) motion to dismiss does not require detailed factual allegations, but a plaintiff's obligation to set forth the grounds of his or her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (internal citation omitted). "[T]he Supreme Court recently . . . prescribed a new inquiry for us to use in reviewing a dismissal: whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570). "The [Supreme] Court explained that a plaintiff must 'nudge his claims across the line from conceivable to plausible' in order to survive a motion to dismiss." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 570)(alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d at 1177. The Tenth Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(quoting Bell Atl. Corp. v. Twombly,

550 U.S. at 570)(internal citations omitted).

The Supreme Court has recently expounded upon the meaning of <u>Bell Atl. Corp. v. Twombly</u>.

> Two working principles underlie [the] decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

<u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949-50 (2009)(citation omitted). Additionally, the Supreme Court has commented:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.

<u>Id.</u> at 1950.

A court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [must be] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). Facts subject to judicial notice may be considered without converting a motion to dismiss into a motion for summary judgment. <u>See</u> <u>Grynberg v. Koch Gateway Pipeline Co.</u>, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)(citing 27A <u>Fed. Proc., L.Ed.</u> § 62:520 (2003)). Furthermore, when considering a motion to dismiss, "the court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." <u>Van Woudenberg v. Gibson</u>, 211 F.3d 560, 568 (10th Cir. 2000) <u>abrogated on other grounds by</u> <u>McGregor v. Gibson</u>, 248 F.3d 946, 955 (10th Cir. 2001). A court may consider documents to which the complaint refers

if the documents are central to the plaintiff's claim and the parties do not dispute the documents'

authenticity.  See Jacobsen v. Deseret Book Co., 287 F.3d 936, 941-42 (10th Cir. 2002).  If,

however, a document is not incorporated by reference or attached to the complaint, but is referred

to in the complaint and is central to the plaintiff's claim, the defendant may submit an "indisputably

authentic copy to the court to be considered on a motion to dismiss."   GFF Corp. v. Assoc.

Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).  See 5A C.  Wright & A. Miller,

Federal Practice & Procedure § 1327 (3d ed. 2004)("[W]hen the plaintiff fails to introduce a

pertinent document as part of her pleading . . . the defendant may introduce the document as an

exhibit to a motion attacking the sufficiency of the pleading.").

### RELEVANT LAW REGARDING PROCEDURAL DUE PROCESS

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or

property, without due process of law."  U.S. Const. amend XIV, § 1.  Courts engage in a two-step

inquiry to determine whether an individual's procedural due-process rights were violated: "(1) Did

the individual possess a protected property interest to which due process protection was applicable?

(2) Was the individual afforded an appropriate level of process?"  Camuglia v. City of Albuquerque,

448 F.3d 1214, 1219 (10th Cir. 2006) (citation and internal quotations omitted).  See Ripley v.

Wyoming Medical Center, Inc., 559 F.3d 1119, 1122 (2009) ("To set forth an actionable procedural

due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest

and (2) that no due process of law was afforded.")(citations and internal quotation marks omitted).

"In procedural due process claims, the deprivation by state action of a constitutionally protected

interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the

deprivation of such an interest without due process of law."  Zinermon v. Burch, 494 U.S. 113, 125

(1990).  Furthermore, "[a] due process claim . . . can only be maintained where there exists a

constitutionally cognizable liberty or property interest with which the state has interfered." Steffey v. Orman, 461 F.3d 1218, 1221 (10th Cir. 2006).

Before the government acts to impair an individual's property interest, the individual "is entitled to some sort of hearing . . . , although the hearing need not necessarily provide all, or even most, of the protections afforded by a trial." Camuglia v. City of Albuquerque, 448 F.3d at 1220. To evaluate whether procedural protections are constitutionally adequate, a court weighs several factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976). The "root requirement" of due process is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).

## PROPER PARTIES TO SUITS UNDER THE NMHRA

The NMHRA makes it an unlawful discriminatory practice for

> an employer, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of race, age, religion, color, national origin, ancestry, sex, physical or mental handicap or serious medical condition, or, if the employer has fifty or more employees, spousal affiliation; provided, however, that 29 U.S.C. Section 631(c)(1) and (2) shall apply to discrimination based on age; or, if the employer has fifteen or more employees, to discriminate against an employee based upon the employee's sexual orientation or gender identity. . . .

NMSA 1978 § 28-1-7. The NMHRA also allows individuals to bring a lawsuit in the appropriate district court after exhausting their administrative remedies. See Luboyeski v. Hill, 117 N.M. 380,

382, 872 P.2d 353, 355 (1994). The NMHRA provides:

> A person aggrieved by an order of the commission may obtain a trial de novo in the district court of the county where the discriminatory practice occurred or where the respondent does business by filing a notice of appeal within ninety days from the date of service of the commission's order.

NMSA 1978 § 28-1-13A.

The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer."  NMSA 1978 § 28-1-2B.  While acknowledging that there is generally no personal liability under Title VII, the Supreme Court of New Mexico has "reject[ed] the proposition that there can exist no individual liability under the NMHRA."  Sonntag v. Shaw, 130 N.M. 238, 243, 22 P.3d 1188, 1193 (2001).  In Sonntag v. Shaw, a defendant relied on Title VII case law to argue that the owner of a corporation could not be sued as an individual under the NMHRA.  See  Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193.  Although it held that the defendant could not be held personally liable, given that the plaintiff had failed to exhaust administrative remedies, the Supreme Court of New Mexico declined to close the door on individual liability under the NMHRA.  See  Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193.

The Supreme Court of New Mexico noted in Sonntag v. Shaw:

> [T]his Court has acknowledged the possibility of individual liability for discrimination claims. Cf. Luboyeski v. Hill, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) (affirming the dismissal of individual defendants because the plaintiff failed to exhaust administrative remedies against them); Mitchell-Carr v. McLendon, 1999-NMSC-025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing Luboyeski). As Plaintiff suggests, the potential for individual liability for discrimination claims is rooted in the language of the NMHRA itself, which forbids "any person" from supporting a discriminatory practice. Section 28-1-7(I); see NMSA 1978, § 28-1-2(A) (1993) (including within its definition of "person" for purposes of the NMHRA, "one or more individuals").

Sonntag v. Shaw, 130 N.M. at 243, 22 P.3d at 1193.

Previously in this case, the Court concluded that individuals can, at times, be subject to suit

under the NMHRA.  See July 27 MOO at 39.  The Court, in its earlier opinion, noted: "For an individual to be liable under the NMHRA, the individual must meet the NMHRA's definition of employer.  Thus, the individual must have 'acted for the employer.'"  Id. (quoting NMSA 1978 § 28-1-2B).  Consistent with that principle, the Court found that two defendants who worked with the Administrative Office of the Courts acted for Duprey's employer and could be individually liable under the NMHRA.

## RELEVANT LAW REGARDING PUNITIVE DAMAGES

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Moreover, punitive damages are available under Title VII in situations where a plaintiff demonstrates that a respondent discriminated with malice or with reckless indifference to federally protected constitutional rights.  See Hysten v. Burlington Northern Santa Fe Ry. Co., 530 F.3d 1260, 1278 (10th Cir. 2008).  "The Title VII standard for punitive damages requires something more than the employer's mere awareness that its conduct constitutes intentional discrimination however egregious it might be."  Id.  Thus, "[t]he terms 'malice' or 'reckless indifference' [in § 1981a(b)(1)] pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination."  Id. (internal quotation marks and citations omitted).

## ANALYSIS

The Court has had the opportunity to decide many of the legal issues that the parties have raised in the arguments on this motion.  First, consistent with what it has already done, the Court accepts Duprey's stipulation that Parsons and Perry are not liable for suit under Title VII or under the Federal Age Discrimination in Employment Act.  Next, the Court has already determined that

individuals can be subject to liability under the NMHRA.  The Court reiterates that holding here, and also determines that Parsons and Perry are both individuals who "acted for" Duprey's employer and are accordingly amenable to suit under the NMHRA.  The Court holds that neither Parsons nor Perry engaged in activity that gave rise to a violation of due process.  As the Court noted in a previous Memorandum Opinion and Order, Duprey received the process that was due to her.  The Court further finds that Duprey has pled a viable equal-protection claim based on her membership in at least one protected class.  Because at least one equal-protection claim brought pursuant to § 1983 survives, the Court will not, at this time, dismiss the punitive-damages claim.  As for Parsons' immunity defense,  Duprey contended that she is suing Parsons for taking action to make Duprey's demotion effective, and for soliciting and encouraging, along with Perry, false statements against Duprey.  See id.  Duprey therefore maintained that she was not suing Parsons for her testimony, and that the references in the Complaint to Parsons' testimony were present more to demonstrate the significance of the loss of the record, and not to serve as the foundation for the claims against Parsons.  See id. Given that concession, the Court need not address Parsons' immunity defense, because Duprey is not suing her for her testimony.  Finally, the Court declines to award fees, given that Parsons and Perry have not demonstrated a good reason for shifting fees.

## I.      THE COURT WILL NOT CONVERT THIS MOTION INTO A MOTION FOR SUMMARY JUDGMENT.

The Defendants in this case have put forth various motions to dismiss, and during the briefing to many of those motions to dismiss, they have attached materials outside the pleadings for the Court to consider.  Because of the Defendants' practice in this regard, the Court has been required to determine whether to convert the motions to summary judgment, whether to disregard the attachments, or whether to take judicial notice of those attachments.  Similarly, in this motion,

given the manner in which the briefing and the arguments at the hearing have played out, the Court must determine whether to convert this motion to a motion for summary judgment.

Generally, a court must convert a motion to dismiss into a motion for summary judgment if "matters outside the pleading are presented to and not excluded by the court," and "all parties . . . [must be] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(d). Although Parsons and Perry presented materials outside the pleadings to support their arguments, the Court believes it can take judicial notice of those materials without converting this motion to a motion for summary judgment.

Parsons and Perry have attached as exhibits to their reply excerpts from the New Mexico Judicial Branch Personnel Rules. In a previous Memorandum Opinion and Order, the Court took judicial notice of the New Mexico Judicial Branch Personnel Rules because those rules were part of a court order that the Supreme Court of New Mexico had issued. See Memorandum Opinion and Order at 14-16, entered July 14, 2009 (Doc. 48)("July 14 MOO"). The Court stated its rationale for taking judicial notice:

> While there might be a question whether the attachment containing the New Mexico Judicial Branch Personnel Rules, standing alone, represents a document that the Court can notice and rely upon without converting this into a motion for summary judgment, the Court is satisfied that, in this case, the court order incorporates the attachment by reference. See United States v. Ahidley, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007)(noting that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.")(quoting St. Louis Baptist Temple v. Fed. Deposit Ins. Corp., 605 F.2d 1169, 1172 (10th Cir. 1979)). In other words, the rules attached to the order are a part of the order. The Court therefore can notice the order and its attachment without converting this motion to a motion for summary judgment.

July 14 MOO at 15.

In this motion, the Defendants did not attach the Supreme Court's order. Nevertheless, the

-14-

Court believes judicial notice of these rules is proper.  Because of the manner in which the rules were put before the Court previously, the Court is aware that the rules are part of a court order. Duprey does not object in the briefing on this motion to Parsons and Perry's references to the rules, or to the rules' authenticity.  Duprey quotes the rules in her Complaint.  See Complaint ¶ 50, at 11. Indeed, these motions to dismiss have involved many arguments, by both parties, about the operation of the rules.[1]  The more sound approach, then, appears to be to consider the rules, which already became part of the record, by way of judicial notice, during the briefing of a previous motion to dismiss.  The Court therefore takes judicial notice of the rules and does not convert this motion into a motion for summary judgment.

## II.   PARSONS AND PERRY CAN BE INDIVIDUALLY LIABLE UNDER THE NMHRA.

Perry and Parsons argue that the NMHRA does not allow for individual liability.  The Court finds, however, that individual liability is allowed under the NMHRA.  The Court also finds that the allegations in the Complaint, if taken as true, support the contention that they acted for Duprey's employer.  Perry and Parsons are therefore subject to individual liability under the NMHRA.

### A.   NEW MEXICO COURTS HAVE INDICATED THAT INDIVIDUALS CAN BE SUED UNDER THE NMHRA IN THE PROPER CIRCUMSTANCES.

The NMHRA defines "employer" as "any person employing four or more persons and any person acting for an employer."  NMSA 1978 § 28-1-2B.  Given this language, the Supreme Court of New Mexico has recognized that individual liability might exist against certain actors under the

---

[1] While the Court converted one of the motions to a motion for summary judgment, the primary reason for doing so was that Defendants Valerie Park and Lorri A. Hatcher and Duprey had attached materials that were not subject to judicial notice, including a letter from Park to Duprey and an affidavit that Duprey executed.  See Memorandum Opinion and Order at 3-5, entered July 10, 2009 (Doc. 47).  The New Mexico Judicial Branch Personnel Rules did not play a role in the Court's decision to covert Parks and Defendant Lorri Hatcher's motion to dismiss into one for summary judgment.

NMHRA.  Discussing the possibility, the Supreme Court of New Mexico in <u>Sonntag v. Shaw</u> noted:

> [T]his Court has acknowledged the possibility of individual liability for discrimination claims.  <u>Cf. Luboyeski v. Hill</u>, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994) (affirming the dismissal of individual defendants because the plaintiff failed to exhaust administrative remedies against them); <u>Mitchell-Carr v. McLendon</u>, 1999-NMSC-025, ¶ 10, 127 N.M. 282, 980 P.2d 65 (citing <u>Luboyeski</u>).  As Plaintiff suggests, the potential for individual liability for discrimination claims is rooted in the language of the NMHRA itself, which forbids "any person" from supporting a discriminatory practice.  Section 28-1-7(I); <u>see</u> NMSA 1978, § 28-1-2(A) (1993) (including within its definition of "person" for purposes of the NMHRA, "one or more individuals").

<u>Sonntag v. Shaw</u>, 130 N.M. at 243, 22 P.3d at 1193.  This Court has also dealt with situations where plaintiffs have attempted to subject an individual to liability under the NMHRA.  Similar to what happened in <u>Luboyeski v. Hill</u>, this Court in <u>Vigil v. City of Espanola</u>, 2009 WL 1300746 (D.N.M.), considered whether it should preclude a plaintiff from naming an individual in a suit under the NMHRA because the plaintiff failed to exhaust administrative remedies.  See 2009 WL 1300746, at *1.  The Court was able to dispose of the issues in the case without deciding that issue, finding that regardless whether the plaintiff had exhausted her administrative remedies against the individual, her NMHRA claims were time-barred.  See <u>id.</u> at *15.

Although the Court in <u>Vigil v. City of Espanola</u> did not decide whether an individual can be sued under the NMHRA, the Court assumed, without deciding, that an individual properly named as a respondent in the administrative process, could be sued.  See <u>id.</u> *14.  Furthermore, in an earlier case, this Court acknowledged: "As the Supreme Court of New Mexico has held, 'individual defendants cannot be sued in [New Mexico state] district court under the [New Mexico] Human Rights Act unless and until the complainant exhausts her administrative remedies against them.'" <u>Kelley v. City of Albuquerque</u>, 375 F.Supp.2d 1183, 1214 (quoting <u>Luboyeski v. Hill</u>, 117 N.M. at 382, 872 P.2d at 355)(alterations in <u>Kelley v. City of Albuquerque</u>).  In other words, the Court has

implicitly recognized that plaintiffs can bring NMHRA suits against individuals under the appropriate circumstances. The Court's conclusion that individuals can, at times, be subject to suit under the NMHRA is therefore consistent with what the Supreme Court of New Mexico has done in the past. It is also consistent with what this Court has done.

### B.     THERE ARE SUFFICIENT ALLEGATIONS THAT PARSONS AND PERRY ACTED FOR DUPREY'S EMPLOYER.

For an individual to be liable under the NMHRA, the individual must meet the NMHRA's definition of employer. Thus, the individual must have "acted for" the employer. NMSA 1978 § 28-1-2B. In this case, the Court finds that the allegations support a finding that Parsons and Perry acted for the employer, as understood in the NMHRA.

The first step to sorting out whether Parsons and Perry acted for the employer is to determine who the employer is. Duprey's employer is the Twelfth Judicial District. For Parsons and Perry to be subject to potential individually liability in this case under the NMHRA, the factual allegations must support a finding that they acted for the Twelfth Judicial District. The Court believes that there are sufficient allegations that they did so act.

For most of the relevant time period, Perry was Duprey's direct supervisor. She was Court Administrator for the Twelfth Judicial District Court – Duprey's employer. The Court can think of no sound argument that a direct supervisor of a Twelfth Judicial District Court employee taking disciplinary action against the employee is not acting for the employer for purposes of the NMHRA. Presumably, neither can Parsons or Perry, given that they have offered no argument regarding whether Parsons or Perry acted for the Twelfth Judicial District Court. Instead, they focus their arguments on the proposition that individuals cannot be sued under the NMHRA. The Court believes that to reach such a conclusion would be a step down the path towards eliminating the

"acted-for" language from the statute, given that it is through a hierarchy, with different levels of supervisors and/or managers that the Twelfth Judicial District Court acted.  It is primarily through supervisors and managers that a company or entity acts with respect to its employees in a day-to-day sense.  Thus, if any one "acts for" a NMHRA plaintiff's employer, the plaintiff's supervisor usually will do so.

Parsons, while not Duprey's immediate supervisor, is the Chief Judge of the Twelfth Judicial District Court.  If the allegations are taken as true, Parsons had the authority to participate in investigatory and disciplinary action related to Duprey's employment.  The primary allegations that Duprey has made against Parsons and Perry relate to unfair disciplinary actions that Perry took or encouraged Parsons to take, against Duprey.  According to those allegations, on or about November 17, 2006, Duprey was sent home until December 6, 2006 because of allegations that one of her subordinates made against her.  See id. ¶ 37, at 8.  Duprey insists that Parsons and Perry played a role in this disciplinary action.  See id.  Later, Parsons and Perry gave Duprey a "needs improvement" evaluation, which resulted in Duprey being denied a pay raise.  Id. ¶ 38, at 9.  Parsons and Perry "subjected [her] to humiliating, degrading and demeaning interrogations regarding unfounded allegations and complaints made against her by [Duprey's] subordinates, all of whom were Hispanic, and all of whom had banded together against [her]."  Id. ¶ 38, at 9.

Furthermore, Duprey alleges that Parsons and Perry actively solicited unfair and unfounded complaints against her by her subordinates, encouraged antagonistic attitudes, failed and refused to support her in the exercise of her supervisory duties and authority, undermined her, and generally created an atmosphere of harassment and hostility against her.  See id. ¶ 40, at 9.  Duprey also alleges that Perry supported and encouraged Parsons in reprimanding Duprey.  See id. ¶ 41, at 9-10. Ultimately, according to Duprey, Parsons wrote to Duprey on June 28, 2007: "I propose to demote

you from your position of Judicial Manager (Salary Grade JJ) to a Clerk 3 (Salary Grade GG)." Id. ¶ 42, at 10.  Acting on Perry's advice and support, Parsons made Duprey's demotion to Clerk 3 effective.  See id. ¶ 43, at 10.

In short, there are allegations in the Complaint that Parsons and Perry were acting in concert to take various disciplinary actions, and, ultimately, to seal Duprey's demotion.  Parsons proposed a demotion, and later made that demotion effective.  When the chief judge in a judicial district participates in disciplinary action, up to and including making effective the demotion of one of the judicial district's staff members, the judge has acted for the judicial district.  Accordingly, the allegations in the Complaint, if true, establish that Parsons acted for the Twelfth Judicial District Court in a way that would open her up to individual liability under the NMHRA.

It is important to note that the state statute does not require the individual defendant to be an employee of the corporation or entity, but to have "acted for" the employer.  Such language suggests that a contractor or agent, who acts on behalf of a corporation of entity, could be held individually liable under the NMHRA.  Under the allegations in the Complaint, both Parsons and Perry acted for the Twelfth Judicial District Court.  At this stage of the proceedings, they can therefore both be sued as individuals under the NMHRA.

## III.   PARSONS AND PERRY DID NOT ENGAGE IN ANY ACTIVITY THAT DENIED DUPREY DUE PROCESS.

Duprey alleges that Perry and Parsons acted in a way that deprived her of due process.  The primary basis for the due-process claim against Perry and Parsons appears to be their actions in getting Duprey demoted.  At least, in the Court's view, that is the only plausible basis, given that, to show a deprivation of due-process for an adverse employment action, a plaintiff must demonstrate that he or she was deprived of a constitutionally recognized liberty or property interest, and given

-19-

that the only deprivation in which Parsons and Perry are implicated in the Complaint is the demotion.  The Court finds, however, that, whatever Parsons' and Perry's involvement in the demotion, Duprey received adequate due process.

"To set forth an actionable procedural due-process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded." Ripley v. Wyoming Medical Center, Inc., 559 F.3d at 1122 (citations and internal quotation marks omitted).  The Supreme Court has described "the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at  542 (internal quotation marks and citations omitted).

Here, Duprey's Complaint implicates Parsons and Perry in only one deprivation that fits the bill of a constitutionally significant interest.  Namely, Parsons and Perry appear to have had something to do with Duprey's demotion.  A demotion, with its concomitant pay decrease, qualifies as a constitutionally recognized deprivation of a property interest.  Duprey, however, received various procedural protections that satisfied the demands of due process before the demotion became final.

Based on the Complaint's allegations, Duprey was afforded, pursuant to the New Mexico Judicial Branch Personnel Rules, an opportunity to file a grievance from the decision to demote her.  Duprey took that opportunity and received a two-day adversarial grievance hearing on November 16, 2007 and December 5, 2007.  Indeed, Duprey received a relatively elaborate process that satisfied constitutional requirements.  Duprey was afforded, as the constitution requires, "an opportunity for a hearing before [being] deprived of any significant property interest." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542.

A recent Tenth Circuit case illustrates the failing of Duprey's procedural-due process claim arising out of her demotion.  In Lee v. Regents of University of California, 221 Fed. Appx. 711 (10th Cir. 2007), the Tenth Circuit affirmed a district court's order granting qualified immunity to a set of defendants who had been sued after taking part in a series of events culminating in the termination of an individual's employment at Los Alamos National Laboratory.  See 221 Fed.Appx. at 715.  The plaintiff in Lee v. Regents of University of California alleged in his complaint that a probationary employee under his supervision had complained that the plaintiff was treating her unfairly.  See id. at 712.  Encouraged by a fellow staff member, the probationary employee took her complaints to a high-level manager, and explained that she was being mistreated and wanted a job transfer.  See id.  The manager, "acting in concert" with the human relations office, opened an investigation into the probationary employee's complaints.  Id.  The plaintiff alleged in his complaint that "the investigation was unfair, inadequate, biased, and not calculated to yield reliable results, and was instead designed to gather sufficient adverse material concerning [him] to provide a pretextual basis for disciplining him."  Id. (internal quotation marks and citations omitted).  At the same time, he conceded that he had been interviewed twice as part of the investigation into the complaints against him.  See id.  Subsequently, in a meeting between the manager, the individual from the human relations office, and the plaintiff's department group leader, the plaintiff was suspended and demoted.  See id.  Two months later, he was terminated.  See id.

The Tenth Circuit in Lee v. Regents of University of California praised the district court's analysis as "a thorough and well-reasoned opinion," 221 Fed.Appx. at 713, and cited highlights of that analysis, which found that the plaintiff had failed to allege a valid procedural-due process claim for his termination, see id.  Notably, the Tenth Circuit, describing the district court's analysis, stated that the district court

found that even if Lee had challenged the adequacy of the termination process, his § 1983 claim would still have failed because it was evident from the complaint that [the plaintiff] was accorded adequate process.  Citing <u>Cleveland Board of Education v. Loudermill</u> . . . , the [district] court explained that "[a] pretermination hearing 'need not be elaborate' nor does it need to be a full-blown evidentiary hearing. . . . All that due process requires is 'notice and an opportunity to respond.'" Aplt.App. at 59-60.  Here, the court determined that McCabe's pre-termination interviews of [the plaintiff] showed that he was provided with notice and an opportunity to respond, which was all that due process required.

<u>Lee v. Regents of University of California</u>, 221 Fed.Appx. at 713 (first alteration added).  Thus, the Tenth Circuit agreed that the two occasions on which the plaintiff was interviewed were all that due process required to put him on notice and allow him to respond before termination.  <u>See</u> <u>id.</u>  No elaborate proceeding was required.

Duprey received more extensive protections before her demotion was finalized than the plaintiff in <u>Lee v. Regents of University of California</u>, whose claim was dismissed.  On the face of the Complaint, it is apparent that there was a grievance board, chaired by co-Defendant Eugenio S. Mathis, who is the Chief Judge of the Fourth Judicial District Court in the New Mexico.

Duprey has not, in this motion, challenged the adequacy of the grievance hearing, though she has done so in another motion.  The Court believes, however, that the due-process claim against Parsons and Perry, to the extent that it encompasses the grievance hearing, depends to some degree on the Court finding that the grievance hearing was made constitutionally inadequate as a result of Parsons' and Perry's actions.  This conclusion is so because the grievance hearing constitutes the procedural protection in place for employees who received demotions.  Thus, Duprey's primary opportunity to contest her demotion – which she alleges Parsons and Perry brought about – was through the grievance proceeding.  The Court cannot properly say, however, that Parsons or Perry did anything to undermine the adequacy of the grievance hearing.  The only allegations that tie Parsons and Perry to the grievance hearing are that Parsons gave scathing, damaging, biased

testimony.  Duprey, however, disclaimed any cause of action based on Parsons' testimony at the grievance hearing.  The Complaint does not allege that Perry had anything to do with the grievance hearing.

Even if Duprey were suing Parsons for her testimony at the grievance hearing, the Court believes the grievance hearing was, in the end, adequate, and that procedural protections available to Duprey to contest her demotion were sufficient to cut off any procedural due-process claim arising out of the decision to demote her.  The New Mexico Judicial Branch Personnel Rules establish the purpose of the grievance board: "To provide an administrative appeal process for an employee who has completed probation and who has been suspended without pay, demoted, terminated or lost compensation."  New Mexico Judicial Branch Personnel Rules § 10.01, at 47. When Duprey filed her grievance to appeal her demotion, the rules provide that she would "be free from any restraint, interference, coercion, discrimination and/or retaliation resulting from filing the grievance."  Id. § 10.04, at 48.  Mathis, as Chairman, was required to conduct the hearing and administer oaths to all witnesses.  See id. § 10.07(A), at 49.  Furthermore, the rules require that the hearing be recorded.  See id. § 10.07(C), at 49.  Moreover, to further protect the rights of employees facing adverse actions, such as demotion, the rules require:

> D.   The hearing shall be conducted in an orderly and informal manner without strict adherence to The New Mexico Rules of Evidence.  The *Administrative Authority* shall have the burden of proof by a preponderance of the evidence.
>
> E.   The order of the hearing shall be:
>
> > (1)   opening statements:
> >
> > > a.   by *Administrative Authority*
> > >
> > > b.   by Grievant
> >
> > 2.   presentation of case:

       a.      by *Administrative Authority*

       b.      by Grievant

   3.     rebuttal and surrebuttal

   4.     closing statements:

       a.      by *Administrative Authority*

       b.      by Grievant

Id. §§ 10.07(D) to 10.07(E), at 49-50 (italics in original).

Thus, the rules require that the grievance hearing be conducted in an orderly fashion, with parties being allowed to take their turns making opening arguments, putting on their cases, and making closing statements. Witnesses are placed under oath. In this way, the format of the grievance hearing contains numerous built-in procedural rights for individuals who face adverse employment actions such as demotions. A grievance hearing to which New Mexico Judicial Branch employees are entitled before adverse employment actions become final goes beyond what Tenth Circuit law establishes as a constitutional minimum for procedural due process.

Moreover, to reach a decision, the grievance board "shall retire into an *executive session* to deliberate" and "shall issue its written decision . . . ." Id. § 10.08, at 50 (italics in original). This deliberative process indicates that the process in place for aggrieved employees also included deliberative decisionmaking by a panel with members drawn from different backgrounds to further assure fairness and impartiality. The fruit of the deliberation is a written decision that contains findings of fact, and either an order for remedial action or denial of the grievance.

The Court therefore believes that dismissal of Duprey's procedural due-process claim for the events leading to her demotion is consistent with the Tenth Circuit's discussion in Lee v Regents

of University of California. Duprey got her opportunity to be heard at a complex grievance hearing, with an attorney and with an opportunity to question witnesses and make opening and closing arguments to a panel of decision-makers. That grievance hearing constituted due process.

There is some suggestion in the Complaint that the grievance hearing was biased and too short. See Complaint ¶¶ 48-56, at 11-12. Neither Parsons nor Perry, however, took part in any decision-making in the grievance hearing. The Complaint does not state that Perry participated in the grievance hearing. Parsons' only involvement appears to be offering testimony that was highly damaging to Duprey. Even if Parsons gave adverse testimony, Duprey had the opportunity to put on her own case, to present witnesses and evidence, and to attempt to persuade the grievance board to decide in her favor. In short, Parsons' testimony did not deprive Duprey of an opportunity to be heard or to present her case in opposition to the demotion.

Moreover, the Tenth Circuit has held that a plaintiff alleging due-process violations for adverse employment decisions fails to state a claim for biased pre-deprivation proceedings if the plaintiff fails to avail himself of available post-deprivation procedures. See Lee v. Regents of University of California, 221 Fed.Appx. at 714. The plaintiff in Lee v. Regents of University of California argued that the procedures in place for laboratory employees such as him, who were subject to termination, were so biased in favor of the laboratory that the employees should not be required to participate in them to raise a procedural due-process claim. See id. Rejecting that argument, the Tenth Circuit explained:

> We also agree with the district court that [the plaintiff] waived any challenge to the fairness of the Lab's post-termination hearing procedures because he never requested a post-termination hearing. And as the district court stated, he cannot make a futility argument with respect to the post-termination process based on alleged unfairness in the pre-termination process. See Alvin [v. Suzuki], 227 F.3d [107,] 119 [(3d Cir. 2000)] (explaining that bias in early stages of termination process does not prove bias in later stages).

Lee v. Regents of University of California, 221 Fed.Appx. at 714.

The Tenth Circuit in Lee v. Regents of University of California relied on Alvin v. Suzuki, a Third Circuit case, in its futility analysis.  The Third Circuit, in Alvin v. Suzuki, discussed cases "in which plaintiffs have attempted to make a procedural due process claim, charging that bias has infected a review of its deprivation, although they have not used all of the procedures available to them."  227 F.3d at 118.  In such cases, the Third Circuit stated:

> [A] discharged employee cannot claim in federal court that he has been denied due process because his pretermination hearing was held by a biased individual where he has not taken advantage of his right to a post-deprivation hearing before an impartial tribunal that can rectify any possible wrong committed by the initial decisionmaker.

Id. at 119 (internal quotation marks and citations omitted).  The Third Circuit further explained that an employee fails to state a claim for procedural-due process after pursuing a three-level, apparently biased, grievance procedure, if the plaintiff fails to request arbitration when arbitration is available. See id.  The Third Circuit reasoned that such a failure to pursue an available arbitration precluded a due-process challenge "even when the plaintiff allege[d] that the defendants acted in concert to deprive him both of a meaningful hearing and of arbitration because the administrative process in place ha[d] incorporated safeguards adequate to resolve these allegations in a manner consistent with the demands of due process."  Id. (internal quotation marks and citations omitted).

In this case, Duprey had access to a post-deprivation proceeding.  Rule 1-075(B) of the Rules of Civil Procedure for the District Courts of New Mexico, provides:

> An aggrieved party may seek review of a final decision or order of an agency by (1) filing a petition for writ of certiorari in the district court with proof of service; and (2) promptly filing with the agency a copy of the petition for writ of certiorari that has been endorsed by the clerk of the district court.

NMRA 1-075 (2002).  The Court has previously held that, under rule 1-075(B), Duprey had the

opportunity to pursue a petition for certiorari in the district court.  The Court explained:

> Rule 1-075 allows parties to seek the writ to review final decisions by an "agency," and defines agency as "any state or local government administrative or quasi-judicial entity."  NMRA 1-075 (A).  On its face, rule 1-075 applies only to government administrative or quasi-judicial entities.  New Mexico case law supports the proposition that the grievance board would constitute  an administrative or quasi-judicial body whose decisions could be reviewed pursuant to a writ of certiorari to a district court.

July 14 MOO at 25.

Although there is no case law that explicitly states that a right to petition for certiorari is considered a post-deprivation remedy, the Court believes there is no sound reason for finding otherwise.  In at least one other procedural-due process case arising out of the public-employment context, the Tenth Circuit stated that a teacher whose employment was terminated had, in a fashion similar to the plaintiff in Lee v. Regents of University of Cal., waived the right to challenge the adequacy of certain procedural rights "by knowingly failing to take advantage of those procedures." Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas, 869 F.2d 555, 557 (10th Cir. 1998). According to the Tenth Circuit, teachers facing termination enjoyed various rights under Kansas law:

> The Kansas procedures require notice of the reasons for the nonrenewal, allow an opportunity to be heard before termination, and give the teacher a right to choose a member of the hearing committee . . . .  In addition, the statute gives teachers the right to be represented by counsel . . . , to present and cross-examine witnesses . . . , and to subpoena witnesses . . . .  If the hearing committee unanimously finds in the teacher's favor, the board is required to adopt its decision . . . .  If the committee is not unanimous, the board is required to consider the committee's decision, hear oral argument or receive written briefs, and decide whether the teacher should be renewed or terminated . . . .  The board's decision may be appealed to district court . . . , which may receive new evidence and reverse, vacate, or modify the board's decision . . . .

Id. at 557 n.1 (citations omitted).  In other words, the Tenth Circuit in Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas acknowledged that the ability to appeal a board's decision to a district

court was part of the package of post-deprivation procedures that would figure into the due-process calculus.  If an appeal to a district court is considered a post-deprivation remedy, the Court believes a right to seek certiorari to a district court should also be considered a post-deprivation remedy.  Both a right to an appeal and a right to petition for certiorari consist of an individual seeking review of an unfavorable result from an internal hearing by going outside the organization to the district court.  While a writ of certiorari is discretionary, and the appeal discussed in Pitts v. Board of Educ. of U.S.D. 305, Salina, Kansas appears to have been as of right, such a distinction does not deprive the right to certiorari of its character as an opportunity for judicial review to protect against miscarriages of justice.  Accordingly, the Court believes it is proper to consider a right to petition for certiorari in the district court to be a post-deprivation hearing.

There is no contention that Duprey filed a petition for certiorari.  Thus, Duprey declined to pursue an important post-deprivation procedure that was available to individuals such as her, who obtained unfavorable results before the grievance board.  A petition for certiorari would have allowed the state district court the opportunity to grant complete judicial review of what happened at the grievance committee, including whether that committee was biased or contained conflicts of interests.

The Court is cognizant that the Tenth Circuit's holding in Lee v. Regents Of University of Cal. and its reliance in that case on the Third Circuit's Alvin v. Suzuki has the appearance of an exhaustion requirement – something that is not normally a part of § 1983 cases.  In explaining that exhaustion was not the issue in  Lee v. Regents Of University of Cal., the Tenth Circuit stated:

> [The plaintiff's] § 1983 claim fails not because he refused to jump through the requisite hoops, but because he affirmatively pled that he was afforded notice and an opportunity to respond before he was terminated. We also agree with the district court that Lee waived any challenge to the fairness of the Lab's post-termination hearing procedures because he never requested a post-termination hearing. And as

-28-

> the district court stated, he cannot make a futility argument with respect to the post-termination process based on alleged unfairness in the pre-termination process. See Alvin, 227 F.3d at 119 (explaining that bias in early stages of termination process does not prove bias in later stages).

Lee v. Regents Of University of Cal., 221 Fed.Appx. at 714.  Similarly, this case is not about exhaustion.  To precisely state what the Court holds: First, Duprey received the requisite due process because she had notice and an opportunity to respond.  Second, she cannot properly challenge the fairness of the available post-deprivation procedure – in this case, a petition for certiorari – by making allegations that the proceedings through which she had already gone were biased.  Third, she waived the ability only to challenge the fairness of the available post-deprivation proceeding because she did not request such a proceeding.  She did not, by failing to pursue a petition for certiorari, lose the ability to state a claim for due-process violations in general.

Thus, while the Court does not hold that there was an exhaustion requirement, the Court believes the Tenth Circuit has indicated that a plaintiff must first pursue a post-deprivation proceeding if she wants to challenged the fairness of that proceeding.  Duprey did not do so in this case.  Duprey has not otherwise shown that the pre-deprivation proceedings she suffered were constitutionally deficient, given that she had notice and an opportunity to respond.

In other words, even if Duprey argues that a petition for certiorari would be futile because it would require her to seek review with judges on the district court, some of whom might be biased against her, she cannot state a procedural-due process claim on such allegations unless she first petitions for certiorari.  As the Tenth Circuit has explained, Duprey "cannot make a futility argument with respect to the post-termination process based on alleged unfairness in the pre-termination process."  Lee v. Regents of University of California, 221 Fed.Appx. at 714.

Accordingly, the grievance hearing, combined with the possibility of filing a petition for

certiorari to review the grievance board's decision, constituted due process. Given that the hearing fulfilled the requirements of due process, Parson's and Perry's involvement in that hearing – and it appears Perry had no involvement – which was, in any case, minimal, did not cause a deprivation without due process of law.

## IV.    DUPREY HAS PLED A VIABLE CLASS-BASED EQUAL-PROTECTION CLAIM.

The Supreme Court recently dealt with the class-of-one theory in the public-employment context. In Engquist v. Oregon Dept. of Agr., a plaintiff sued her employer, the Oregon Department of Agriculture for, among other things, violation of her right to equal protection, after the Department eliminated her position and ultimately gave her the option of demotion or termination. See 128 S.Ct. at 2149. A jury rejected the plaintiff's claim in Engquist v. Oregon Dept. of Agr. that she was treated differently on account of membership in a suspect class. See id. The jury found in the plaintiff's favor, however, on her allegation that her employer treated her differently than others without any rational basis. See id. at 2149-50.

The Supreme Court in Engquist v. Oregon Dept. of Agr. determined that this class-of-one claim, which involved a claim for differential treatment based not on membership in a protected class, but rather on animus toward the individual, was not available against public employers under the equal-protection clause. See Engquist v. Oregon Dept. of Agr., 128 S. Ct. at 2151. In reaching its conclusion, the Supreme Court noted: "[W]e have often recognized that government has significantly greater leeway in its dealings with citizen employees than it does when it brings its sovereign power to bear on citizens at large." Id.

In an earlier motion, all of the Defendants in this case asked the Court to find that Duprey's equal-protection claim was an impermissible class-of-one claim. See Defendants' Motion to Dismiss, filed September 23, 2008 (Doc. 12). The Court granted the motion in part and denied it

in part, stating:   "To the extent that there is a class-of-one theory in the Complaint, the Court will

dismiss it."  Memorandum Opinion and Order at 7, filed June 22, 2009 (Doc. 43)("June 22 MOO").

Otherwise, the Court found that Duprey had pled a viable class-based claim.  See id.  In declining

to dismiss the equal-protection claim in its entirety, the Court explained:

> The allegations set forth in paragraphs 3 through 6, and in paragraph 39 [of the
> Complaint], are sufficient to establish that Duprey is asserting membership in more
> than one protected class.  Although the Defendants argued at the hearing that the
> incorporation paragraph was not sufficient to pull these allegations into Count VI,
> see Tr. at 3:1-8 (Maynes), the Court disagrees.  Rule 8 governs the equal-protection
> pleading in this case.  Under rule 8, what matters is the function that the Complaint
> must fulfill, not its form.  Thus, Count VI may be somewhat spartan, and while
> Duprey's Complaint is, in some respects, inartfully drafted, the allegations are
> sufficient to the put the Defendants on notice of the claims they must rebut.  The
> Court is aware that the paragraphs tying Duprey to protected classes lack reference
> to the equal-protection claim.  The Court believes it is sufficient, however, for
> Duprey to plead membership in the classes, regardless whether she states that such
> membership applies to equal protection in addition to Title VII and any other
> provisions she may have listed.  An allegation that a plaintiff is female, or that the
> plaintiff belongs to a race against which members of another race discriminated, puts
> the Defendants on notice.

June 22 MOO. at 11-12.  In short, the Court found that, while Count VI, which contains the equal-

protection claim, did not make reference to Duprey's membership in any class, the preceding

paragraphs in her Complaint, which Count VI incorporated, pled class membership.  The Court sees

no sound reason to revisit its holding from the June 22 MOO.

Duprey has argued that it is a rule 11 violation for Parsons and Perry to raise the class-of-one

argument at this stage, although Duprey has not moved for sanctions.  The Court does not believe

Parsons and Perry violated rule 11 in raising the defense.  Most of the substantive motions in this

case were filed within a short time-period.  While the Court ultimately did not fully credit the

Defendants' class-of-one argument, the Court granted the motion to dismiss reflected in Doc. 12 in

part.  Because the Defendants partially prevailed on their class-of-one argument, though possibly

not to the extent they would have liked, the Court does not believe it would be appropriate to deem their argument a rule 11 violation.  Rather, the Court believes Parsons and Perry raised the issue in good faith, at a time before there was a ruling from this Court on it.

## V.    THE COURT WILL NOT DISMISS DUPREY'S PUNITIVE-DAMAGES CLAIM AT THIS TIME.

Based on the Court's discussion of the issues raised in this motion, at least one § 1983 claim remains against Perry and Parsons.  That claim is for equal protection.  Count VI alleges that "Defendants Parsons, Mathis, Perry, Hatcher and Park are individually liable in their official capacities to Plaintiff for said violations, pursuant to 42 U.S.C. § 1983."  Complaint ¶ 83, at 17. Given that an equal-protection claim survives, the Court will not dismiss the punitive-damages claim against Parsons and Perry.

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. at 56. Moreover, punitive damages are available under Title VII in situations where a plaintiff demonstrates that a defendant discriminated with malice or with reckless indifference to federally protected constitutional rights.  See Hysten v. Burlington Northern Santa Fe Ry. Co., 530 F.3d at 1278.

In this motion, the Court has, pursuant to Duprey's concession, dismissed the Title VII claims and the Federal Age Discrimination in Employment Act claim against Parsons and Perry because they are not amenable to individual liability under Title VII or under the Federal Age Discrimination in Employment Act .  Thus, Duprey cannot recover punitive damages based on Title VII.  Nevertheless, although the Court has dismissed the due-process claims against Parsons and

Perry, a claim under 42 U.S.C. § 1983 remains.  The Court has declined to credit Parsons' and Perry's class-of-one argument, and has accordingly not dismissed the equal-protection claim outright.  The Court did not otherwise explore the merits of the equal-protection claims.  If Parsons and Perry believe the Complaint or the record does not support an equal-protection claim for reasons other than those rooted in the class-of-one arguments, they may bring an appropriate motion to dismiss or motion for summary judgment.  They have not briefed the issue, nor has Duprey had the opportunity to brief it.  Accordingly, the equal-protection claim against Parsons and Perry remains alive.

Because the equal-protection claim is still part of the case at this time, the Court cannot properly say that no punitive damages are available.  The Court will therefore decline to dismiss the punitive-damages claim that Duprey has brought against Parsons and Perry.  If either Parsons or Perry believe there are grounds to dismiss the equal-protection claim against them, they may move the Court to do so.

## VI.   THE COURT WILL NOT AWARD ATTORNEY'S FEES TO PARSONS OR TO PERRY.

"It is the general rule in the United States that in the absence of legislation providing otherwise, litigants must pay their own attorney's fees."  Christianburg Garment Co. v. EEOC, 434 U.S. 412, 415 (1978).  Nevertheless, 42 U.S.C. § 1988 provides that, for actions brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs. . . ."  42 U.S.C. § 1988.

"While a prevailing plaintiff ordinarily is entitled to attorney fees, a prevailing defendant in a civil rights action may recover attorney fees only if the suit was vexatious, frivolous, or brought to harass or embarrass the defendant."  Mitchell v. City of Moore, 218 F.3d 1190, 1203 (10th Cir.

2000)(citations and internal quotations omitted).  "[R]arely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff."  Id. (citing Clajon Prod. Corp. v. Petera, 70 F.3d 1566, 1581 (10th Cir. 1995)).  That a district court dismissed a plaintiff's case on summary judgment does not automatically entitle a prevailing defendant to attorney's fees.  See Mitchell v. City of Moore, 218 F.3d at 1203  (citing Jane L. v. Bangerter, 61 F.3d 1505, 1513 (10th Cir. 1995)).  If the losing plaintiff's case was vexatious, frivolous, or brought to harass or embarrass the defendant, the court can award fees even if the plaintiff did not bring his case in bad faith.  See Clajon Prod. Corp. v. Petera, 70 F.3d at 1581 (quoting Hughes v. Rowe, 449 U.S. 5, 14 (1980)).  The Supreme Court has warned district courts against engaging

> in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation.  Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421-22 (1978)(discussing awards to prevailing defendants in Title VII cases).  See Jane L. v. Bangerter, 61 F.3d at 1513 (recognizing that the Supreme Court adopted Christiansburg Garment Co. v. EEOC's reasoning for attorney's fees under § 1988 in Hensley v. Eckerhart, 461 U.S. 424, 429 n.2 (1983)).  Subjective bad faith is not part of the attorney's fees analysis.

In this case, Parsons and Perry prevailed on some aspects of their motion, but lost on others. As a threshold matter, the Court cannot rightfully find that they are completely prevailing parties at this time entitled to attorney's fees.  Moreover, the Court sees no need to shift costs at this time.

The Court also believes that Duprey is pursuing her lawsuit in good faith, and for purposes

other than harassment or vexation.  "Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." Christiansburg Garment Co. v. EEOC, 434 U.S. at 421-22.  The claims that the Court has dismissed against Parsons and Perry may have been difficult to maintain under governing precedent.  Even so, the Court cannot say, on the record before it, that Duprey was unreasonable in asserting her due-process claims against Parsons and Perry.  The Court does not believe there is a need to punish Duprey for bringing her claim and testing the law in this area.  The Court will therefore exercise its discretion and deny the request for attorney's fees under 42 U.S.C. § 1988.

In conclusion, the Court finds that some of Duprey's claims against Parsons and Perry survive.  First, Parsons and Perry are amenable to individual liability under the NMHRA because they "acted for" the Twelfth Judicial District Court in participating in employee-discipline matters that resulted in a demotion.  Second, the Court declines to dismiss the equal-protection claim that Duprey has raised against Parsons and Perry.  On the other hand, the Court dismisses those Counts based on Title VII and on the Federal Age Discrimination in Employment Act against Parsons and Perry because those causes of action do not run against individuals.  The Court also dismisses Duprey's due-process claims against Parsons and Perry because Duprey received the process that was due to her.

**IT IS ORDERED** that Defendants Parsons and Perry's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) is granted in part and denied in part.

_____
UNITED STATES DISTRICT JUDGE

-35-

*Counsel*:

Dennis W. Montoya
Montoya Law, Inc.
Rio Rancho, New Mexico

 *Attorneys for the Plaintiff*

Paula Grace Maynes
Miller Stratvert, P.A.
Santa Fe, New Mexico

 *Attorney for the Defendants*